## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 245 FBI employees, supported by approximately 72 contractors, who staff a total of twelve (12) FBI Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13,526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)      Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a.

(4)      On January 31, 2020, Health and Human Services Secretary Alex M. Azar II

declared a public health emergency for the United States to aid the nation's healthcare

community in responding to COVID-19.  On March 11, 2020, the World Health Organization

publicly characterized COVID-19 as a pandemic.[1]  On March 13, 2020, the President declared a

National Emergency in an effort to address the spread of COVID-19.[2]  Further, on March 16,

2020, the President announced new guidelines to slow the spread of the virus, to include

avoiding groups of more than 10 people and closing schools in many communities.[3]  This

guidance follows recommendations by the Centers for Disease Control (CDC) to engage in

social distancing.[4]

(5)      The United States Office of Personnel Management (OPM) has been issuing

guidance to address how the Federal Government can implement measures to protect its

workforce and the American public.  Specifically, on March 7, 2020, OPM recommended the

"incorporation of telework and 'social distancing' in COOP [Continuity of Operations] and

emergency planning [to] allow the Federal Government to continue functioning efficiently and

---

[1] Centers for Disease Control and Prevention. "Coronavirus Disease 2019 (COVID-19): Situation Summary."  www.cdc.gov, accessed March 13, 2019.

[2] *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last accessed Mar. 17, 2020).

[3] *See* The President's Coronavirus Guidelines for America, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last accessed Mar. 17, 2020).

[4] *See, e.g.*, Centers for Disease Control "Interim Guidance for Businesses and Employers" https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html (last accessed Mar. 17, 2020).

effectively, while ensuring the health and safety of employees."[5]  Further, on March 15, 2020,

both the Acting Director of the Office of Management and Budget (OMB) and the Deputy

Attorney General issued guidance to Federal agencies in the National Capital Region (NCR) to

implement maximum telework flexibilities.  OMB's guidance asked agencies "to offer

maximum telework flexibilities to all current telework eligible employees, consistent with

operational needs of the departments and agencies as determined by their heads."[6]  The Deputy

Attorney General, in turn, implemented OMB's guidance through a memorandum to Department

of Justice Components directing components to "move to a posture of maximum telework in the

NCR effective Monday, March 16, until further notice."[7]

(6)     The FBI is implementing these guidelines to protect its employees and their

communities, and to ensure that it can continue to protect the American people during this

national emergency.  Specifically, FBI executive leadership issued guidance requiring that any

employees who can telework must do so, regardless of whether they are in a mission-critical

position.[8] However, if telework is not available for a position that is not mission-critical, the

employee in that position will be placed on administrative leave and not permitted to work.  If

---

[5] United States Office of Personnel Management Memorandum "Coronavirus Disease 2019 (COVID-19); Additional Guidance" (March 7, 2020), https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance (last accessed Mar. 17, 2020). *See also* United States Office of Personnel Management Memorandum "Updated Guidance on Telework Flexibilities in Response to Coronavirus" (March 12, 2020), https://www.chcoc.gov/sites/default/files/M-20-13.pdf (last accessed Mar. 17, 2020).

[6] Memorandum from the Acting Director of The Office of Management and Budget to the Heads of Departments and Agencies "Updated Guidance for National Capital Region on Telework Flexibilities in Response to Coronavirus" (March 15, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M20-15-Telework-Guidance-OMB.pdf (last accessed Mar. 17, 2020).

[7] Memorandum from the Deputy Attorney General to Heads of Department [of Justice] Components, "Updated Guidance for the National Capital Region on Maximum Telework in Response to the Coronavirus" (March 15, 2020).

[8] A mission-critical position is one that's functions absolutely cannot be put on hold.

telework is not available for a mission-critical position, managers are being advised to rotate employees who perform that function to limit the number of employees in the office at any given time.

(7)     Telework is not available for RIDS employees.  The systems that they work on are located on FBI's SECRET-level classified enclave.  Significantly, most FOIA searches are conducted using Sentinel and documents are processed in the FOIA Document Processing System (FDPS), both of which maintain classified and other sensitive information and are located on the SECRET enclave.[9]  Furthermore, many FOIA requests involve records that must undergo classification reviews before they can be processed for FOIA exemptions.  That work necessarily must be done in the office.

(8)     RIDS has designated its employees as not mission-critical and sent all employees home as of March 17, 2020.  Only a limited number of managers are being permitted to report to the office, but no FOIA processing is occurring as of March 17, 2020.  While RIDS currently anticipates that its staff will return to work on March 30, 2020, this situation remains fluid and will be regularly re-assessed as circumstances change.  As of March 17, 2020, no further production of records pursuant to FOIA will be made, whether those productions are in relation to requests in litigation or at the administrative stage.  This includes responses to FOIA consultation requests or referrals from other agencies to the FBI.  RIDS staff members responsible for drafting *Vaughn* declarations and indexes in litigation matters have also been designated as not mission-critical and sent home.

---

[9] Moreover, in order to downgrade and move information from the SECRET enclave to an unclassified system requires running particular security protocols that can only be done on the classified enclave.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Executed this 18th day of March, 2020.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia