UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-1058 (ABJ) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant U.S. Department of Justice ("the Department") respectfully moves for summary judgment. As set forth in the accompanying memorandum of points and authorities, the Department is entitled to judgment on Plaintiff's Complaint brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, because the Federal Bureau of Investigation conducted a reasonable search for records responsive to Plaintiff's FOIA request, produced non-exempt information, and properly withheld information under FOIA Exemptions 3, 6, 7(C), 7(D), or 7(E) that was not reasonably segregable for production.

The Department does not include a statement of facts in support of its motion. *See* Jan. 21, 2020 Minute Order (dispensing with the LCvR 7(h)(1) statement of undisputed material facts requirement). A proposed order, however, is attached.

Dated: July 2, 2020
      Washington, DC

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division


By: _____ /s/ *Michael A. Tilghman II* _____
      MICHAEL A. TILGHMAN II
      D.C. Bar #988441
      Assistant United States Attorney
      555 Fourth Street, N.W.
      Washington, D.C. 20530
      (202)252-7113
      Michael.Tilghman@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |  |
|---|---|---|
| SETH HETTENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

———————————————————————

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff sued Defendant United States Department of Justice ("the Department"), seeking Federal Bureau of Investigation ("FBI") records relating to Vyacheslav Kirillovich Ivankov ("Ivankov"), alleging the records were responsive to his Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request to the FBI. The FBI identified 524 pages responsive to Plaintiff's FOIA request, produced in full 63 pages, and withheld 119 pages in full and 313 pages in part under FOIA Exemptions 3, 6, 7(C), 7(D), or 7(E), *see* 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The FBI also withheld 29 duplicate pages.

As discussed in more detail below, the FBI conducted a reasonable search for records responsive to Plaintiff's FOIA request because it searched its Central Records System ("CRS") and focused its production on a set of documents to which Plaintiff agreed to limit his request. The FBI properly withheld duplicative pages and information under FOIA exemptions. Under Exemption 3, the FBI withheld information that satisfies the criteria of one of three withholding statutes—(1) Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C §§ 2510-20; (2) Federal Rule of Criminal Procedure 6(e) ("Rule 6(e)"); and (3) the National Security Act of 1947 ("NSA"), 50 U.S.C. § 3024 (i)(1). The FBI properly withheld information

under Exemptions 6 and 7(C) to protect the privacy rights of FBI Special Agents and professional staff, third parties, local law enforcement, and foreign agents and staff, the invasion of which could be caused by the release of the information. The FBI also properly withheld information under Exemptions 7(D) and 7(E) to protect confidential sources and to prevent disclosure of law enforcement techniques or procedures that could permit criminals to evade law enforcement efforts. The Court should approve the application of the referenced exemptions because the withheld information cannot be reasonably segregated for disclosure. Accordingly, the Department respectfully requests that the Court enter judgment in its favor.

## BACKGROUND

On September 16, 2017, Plaintiff submitted an electronic FOIA request to the FBI, seeking records concerning Ivankov, noting that he arrived in the United States in 1992 and was arrested by the FBI on charges of extortion. Plaintiff also noted that after Ivankov was released from prison and returned to Russia, he was assassinated in 2009 in Russia. Michael G. Seidel Decl. ("Seidel Decl.") ¶ 5, Ex. A; *see also* Compl. ¶¶ 5-7.[1] Plaintiff sought: "details of Ivankov's background, his connection with the Mogilevich organization, details of his activities in the United States from 1992-1995, and any and all associations between Ivankov and Donald Trump or members of the Trump Organization." Compl. ¶ 5, Ex. A. Plaintiff also requested "The Invakov aka 'Yaponchik' Organization produced by the Organizational Intelligence Unit in 1994." *Id.*

The FBI acknowledged receipt of Plaintiff's FOIA request by letter dated September 22, 2017. *Id.* ¶ 6. By letter dated September 29, 2017, the FBI advised Plaintiff that records responsive to his request were previously released under FOIA and enclosed a CD containing 875 previously

---

[1]     Mr. Seidel is currently the Acting Section Chief of the Record/Information Section, of the Information Division of the FBI. Seidel Decl. ¶ 1.

processed pages and a copy of the explanation of exemptions for withheld information. *Id.* ¶ 8. The FBI also advised Plaintiff that additional records responsive to his request exist and that, if he was dissatisfied with the FBI's release, he could request additional records for processing. *Id.* Plaintiff did so by email dated October 6, 2017. *Id.* ¶ 9.

To fulfill Plaintiff's request, the FBI searched its CRS, which "spans the entire FBI organization" and "consist[s] of . . . files compiled and maintained by the FBI . . . worldwide." *Id.* ¶ 22. Specifically, the FBI conducted an index search of the CRS for potentially responsive records employing the Universal Index ("UNI") in Automated Case Support ("ACS") system, which became effective on October 1, 1995 and was decommissioned on August 1, 2018.[2] *Id.* ¶¶ 26-29, 32-33. The FBI performed its search using the following search terms:  "Ivankov, Vyacheslav, Kirillovich," "Ivankov, Vyacheslav, K," and "Ivankov, Vyacheslav." *Id.* ¶ 33. The FBI's search located an estimated 37,934 pages potentially responsive to Plaintiff's FOIA request, which the parties agreed to limit to 528 potentially responsive pages. *Id.*  ¶¶ 15, 34.

On April 16, 2019, Plaintiff sued the Department alleging the FBI provided "no substantive response" to his FOIA request, Compl. ¶ 18, and seeking an Order requiring the FBI to disclose responsive records in their entirety, *id.* at p. 4. The FBI has since completed its release of information to Plaintiff and in total released 376 pages in full or with redactions at no charge. *See* Joint Status Report (ECF No. 7); Seidel Decl. ¶¶ 19-21. The FBI redacted some of the referenced pages and withheld other pages pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), or 7(E). Seidel Decl. ¶¶ 19-21.

---

[2]      On August 1, 2018, the FBI migrated the data from ACS into Sentinel, its next general case management system, which became effect on July 1, 2012, after Ivankov's death in 2009.  *Id.* ¶¶ 28, 33 n.5.

## LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Such a showing has been made when an agency establishes that it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, an agency may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

Generally, once the moving party has met its burden on summary judgment, the nonmoving party can overcome summary judgment by "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. However, in the FOIA context, if a plaintiff does not provide evidence that an agency has acted in bad faith, "'a court may award summary judgment solely on the basis of information provided by the agency in declarations,' provided that the declarations are not 'conclusory, merely reciting statutory standards, or . . . too vague or sweeping.'" *Rojas-Vega v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 300, 306 (D.D.C. 2018) (Berman Jackson, J.) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009), and *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987)).

# ARGUMENT

## I.   The FBI Performed a Reasonable Search for Responsive Records.

To establish that it conducted a reasonable search, an agency need only "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the *search* for those documents was *adequate*." *Weisburg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). The Department meets its initial burden of establishing that the FBI conducted a reasonable search.

Plaintiff initially sought all FBI records regarding Ivankov, a "Russian mafia boss" who arrived in the United States in 1992, was deported to Russia in 2004, and died on October 9, 2009. Compl. ¶¶ 5-7. Mr. Seidel explains in his attached declaration that the FBI conducted a search of ACS for responsive documents.[3] Seidel Decl. ¶¶ 26-27, 32-33. This search was "reasonably calculated to uncover all relevant documents," *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), because Plaintiff sought information related to Ivankov and the ACS case management system was "relied upon by the FBI daily to fulfill essential functions such as conducting criminal . . . investigations," Siegel Decl. ¶ 26 n.3. Notably, Plaintiff does not challenge the FBI's search for responsive records. *See* Compl; June 20, 2019 Joint Status Report (ECF No. 6) (noting "the parties have reached an agreement that plaintiff's request will be limited to

---

[3]     A search of Sentinel would not have been expected to locate responsive records for two reasons: (1) the FBI commenced using Sentinel after Ivankov's death in 2009; and (2) Plaintiff's 2017 FOIA request predated the 2018 decommissioning of ACS. Therefore, an ACS search was the method available to conduct a search to locate records responsive to Plaintiff's request. *Id.* ¶¶ 28-29, 33 n.5.

approximately 525 pages that the FBI has located as potentially responsive to plaintiff's FOIA request."). The Court should therefore find that the Seidel Declaration is "'reasonably detailed' [and] 'describ[es] the agency's actions and the scope of the search,' … thereby satisfying [the Department]'s initial burden" of establishing a reasonable search. *See Dillon v. Dep't of Justice*, Civ. A. No. 17-1716 (RC), 2020 U.S. Dist. LEXIS 44962, at \*38 (D.D.C. Mar. 16, 2020) (citations omitted).

## II.    The FBI Properly Withheld Duplicative Pages and Information Under Exemptions 3, 6, 7(C), 7(D), and 7(E).

### A.    Duplicative Pages

"Under FOIA, 'virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions.'" *Parker v. Dep't of Justice*, 934 F.2d 375, 378 (D.C. Cir. 1991) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975)). The FBI, however, properly withheld 29 pages as duplicative,[4] *see* Seidel Decl. ¶ 4, Ex. Q at B1, because "[i]t would be illogical and wasteful to require an agency to produce multiple copies of the exact same document," *Defenders of Wildlife v. DOI*, 314 F. Supp. 2d 1, 10 (D.D.C. 2004) (citing *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10-11 (D.C. Cir. 1980)). For that reason, this Court should find that "FOIA does not require agencies to produce duplicative records[,]" *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (citing cases), and conclude that the FBI properly withheld the 29 duplicative pages.

---

[4]    The FBI bates-labeled all pages responsive to Plaintiff's FOIA request consecutively as "19-cv-1058(FBI)-1 through 19-cv-1058(FBI)-524." Seidel Decl. ¶ 35. The duplicative pages withheld have a bates-label ending in 4, 41, 167, 169, 181, 196, 267-270, 274-276, 306, 359, 365-367, 375-379, 402-403, 457-458, 503-504.

B.      **Exemption 3**

The FBI also properly withheld information under FOIA Exemption 3. Exemption 3 permits an agency to withhold records "specifically exempted from disclosure by statute" provided that the statute, if enacted before the OPEN FOIA Act of 2009, either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350–51 (D.C. Cir. 1978). Consequently, under Exemption 3, judicial review is limited to whether (1) the statute in question qualifies as an Exemption 3 statute; and (2) the withheld material satisfies the criteria of that statute. *See CIA v. Sims*, 471 U.S. 159, 167 (1985).

1.      Each of The Withholding Statutes Qualify as An Exemption 3 Statute.

The three statutes the FBI relied on to withhold information under Exemption 3—(1) Title III; (2) Rule 6(e); and (3) the NSA, *see* Seidel Decl. ¶¶ 39-45—qualify as withholding statutes under Exemption 3.[5] *See Davis v. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) ("Title III of the Omnibus Crime Control and Safe Streets Act of 1968, U.S.C. §§ 2510-2521 … 'falls squarely within the scope' of Exemption 3[.]") (quoting *Lam Lek Chong v. DEA*, 929 F.2d 729,

---

[5]      Paragraph 38 of the Seidel Declaration and exhibit Q to that declaration provide numeric codes to correspond with various categories of exempt information. *See* Seidel Decl. ¶¶ 37-38, Ex. Q. The term "coded categories" as used in this memorandum refers to the numeric codes included in paragraph 38 of the Seidel Declaration and exhibit Q to that declaration. Coded categories (b)(3)-1, (b)(3)-2, and (b)(3)-3 correspond to the referenced statutes, respectively. *See* Seidel Decl. at Ex. Q p. A-1.

733-34 (D.C. Cir. 1991)); *Westmoreland v. FBI*, Civ. A. No. 13-2058, 2015 U.S. Dist. LEXIS 112692, at *14 (D.D.C. Aug. 25, 2015) ("Rule 6(e) is a statute for purposes of Exemption 3 because Congress affirmatively enacted it.") (citing *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981)); *CNN, Inc. v. FBI*, 384 F. Supp. 3d 20, 30 (D.D.C. 2019) (finding that the NSA "is a valid Exemption 3 statute.") (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015)).

        2.        The Material Withheld Under Exemption 3 Satisfies the Criteria of One of <u>The Withholding Statutes.</u>

The information withheld under Exemption 3 falls under one of the referenced statutes.[6] First, the FBI redacted pages relating to individuals targeted for wiretaps or information obtained via a wiretap under Title III. *See* Seidel Decl. ¶¶ 40-41, Ex. Q. Title III specifically exempts from disclosure certain information concerning Court-ordered interceptions and recordings by federal law enforcement agencies, including the identities of targeted individuals, targeted locations of microphones, the identities of participants in intercepted and/or recorded conversations, and the content of these intercepted and recorded conversations. *See Canning v. Dep't of Justice*, 263 F. Supp. 3d 303, 310-311 (D.D.C. 2017) (citing cases). Given the clear requirement that such information must be withheld, *see* 5 U.S.C. § 552(b)(3), the Court should find that the FBI properly redacted pages relating to individuals targeted for wiretaps or information obtained via a wiretap under FOIA Exemption 3.

Second, the FBI redacted pages in full and in part under Rule 6(e) to protect federal grand jury information. Seidel Decl. Ex. Q. This information derived from an FBI investigative file and

---

[6]      The pages withheld in full have a bates-label ending in 342-43. Seidel Decl. at Ex. Q pp. A1-A7. The pages withheld in part have a bates-label ending in 3, 5, 42-43, 47, 50, 101, 140, 143, 212-13, 215, 219, 287-88, 291, 310, 332-33, 335, 339-41, 344, 358, 360-61, 391-92, 520-21, and 523. *See id.*

included details about one or more federal grand juries empaneled in relation to the investigation at issue. Seidel Decl. ¶ 42. The pages also contain information about the names of recipients of federal grand jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and information provided in response to a federal grand jury subpoena. *Id.* This withheld information "would 'tend to reveal some secret aspect of the grand jury's investigation,'" such as the identities of jurors or the strategy or direction of the investigation and therefore is covered by Rule 6(e). *See Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quoting *Senate of P.R. ex rel. Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)); Seidel Decl. ¶ 42.

Third, the FBI withheld pages, in part, under the NSA—which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1)[7]—because the information pertains to "intelligence source and method of gathering intelligence" information. Seidel Decl. ¶ 45, Ex. Q. Given the requirement that such information must be withheld, the Court should find that the FBI properly withheld information pursuant to FOIA Exemption 3.

### C.      Exemptions 6 and 7(C)

The FBI invoked Exemptions 6 and 7(C)—which "operate to protect personal privacy interests," *Dillon*, 2020 U.S. Dist. LEXIS 44962, at *47—to withhold in full and in part pages.[8]

---

[7]      Notably, courts have recognized that not just the Director of National Intelligence, but also other agencies may rely on the amended NSA to withhold records. *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 862-63, 865 (D.C. Cir. 2009); *Talbot v. CIA*, 578 F. Supp. 2d 24, 28-29 n.3 (D.D.C. 2008).

[8]      The pages withheld in full have a bates-label ending in 15, 20-22, 28-29, 31-34, 83-86, 89, 107-108, 120-132, 164, 166, 168, 199-202, 204-205, 207-211, 296-297, 299-300, 342-343, 348, 350, 352, 354, 373, 388-390, 439, 442, 447-453, 455-456, 459-461, 463-467, 470, 475-477, 480-491, 495, 500, 505-506, 510-511, and 514. *See* Seidel Decl. at Ex. Q pp. A1-A7. The pages withheld in part have a bates-label ending in 2, 7, 9-14, 16-19, 23-24, 27, 30, 36-38, 40, 42-44, 46-

*See* Seidel Decl. Ex. Q. Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Notably "[b]oth Exemption 6 and Exemption 7(C) require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'" *Dillon*, 2020 U.S. Dist. LEXIS 44962, at *48 (citing *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *Davis v. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). However, "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989)). "If the information withheld here was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then [the Court] would have no need to

---

51, 54-55, 81-82, 87-88, 90-91, 94, 101-106, 111-119, 133-142, 144, 146-147, 152-160, 162-163, 171, 173-175, 178-180, 183-195, 197-198, 212-213, 215-216, 218-255, 257-260, 262-266, 271, 277, 280-281, 289-292, 294, 298, 301, 305, 307, 309-319, 321-328, 330, 332-341, 344-347, 349, 351, 353, 355-358, 360-364, 368-372, 374, 380, 384, 386, 391-392, 394-401, 404-407, 410-412, 414-418, 420-425, 427-438, 441, 445-446, 492-494, 496-499, 501-502, 507-509, 512-513, and 515-523. *See id.*

consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth*, 642 F.3d at 1173.

After balancing the public and private interests pertinent to disclosure, the FBI asserted Exemption 7(C) (along with Exemption 6) for eight categories of information pertaining to the investigation of Ivankov and his role in Russian Organized Crime: (i) names and identifying information of FBI Special Agents and professional staff involved in the investigation; (ii) names and identifying information of third parties of investigative interest; (iii) names and identifying information of third parties merely mentioned in FBI investigative records; (iv) names and identifying information of non-FBI federal government personnel who provided information to or otherwise assisted the FBI with its investigation; (v) names of local law enforcement personnel who aided the FBI in its investigative activities; (vi) names and identifying information of third parties who provided information during the course of the investigation; (vii) names and identifying information regarding third party victims; and (viii) names of foreign government agents and personnel who assisted the FBI in its investigation.[9] *See* Seidel Decl. ¶¶ 51-61. The FBI did so for good reason.

FBI records are law enforcement records when "related to enforcement of federal laws." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002). The FBI compiled the records as a part of an investigation, which is supported by Plaintiff's FOIA request. *See* Seidel Decl. ¶ 47 (the "records at issue were compiled in furtherance of the FBI's investigation of Vyacheslav

---

[9]     The referenced categories refer to numeric codes (b)(6)-1 and (b)(7)(C)-1; (b)(6)-2 and (b)(7)(C)-2; (b)(6)-3 and (b)(7)(C)-3; (b)(6)-4 and (b)(7)(C)-4; (b)(6)-5 and (b)(7)(C)-5; (b)(6)-6 and (b)(7)(C)-6; (b)(6)-7 and (b)(7)(C)-7; and (b)(6)-8 and (b)(7)(C)-8, respectively. *See* Seidel Decl. at Ex. Q p. A-1.

Ivankov and his role in and activities with Russian organized crime."); Ex. A (asserting that "Ivankov was arrested by the FBI" in 1995 and seeking from the FBI "details of Ivankov's background, his connection with the Mogilevich organization, [and] details of his activities in the United States from 1992-1995").

In addition, each category of information is protected from disclosure because the privacy interests outweigh the public interest in disclosure. "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Davis*, 968 F.2d at 1282) (other citation omitted). But disclosure of identifying information of Special Agents, professional government staff, and state and foreign law enforcement officials—categories (i), (iv), (v), and (viii) above—could subject those individuals to harassment or physical danger based on their involvement in the investigation, Seidel Decl. ¶¶ 51-53, 56-57, 61, and therefore is properly withheld under Exemption 7(C), *see Sussman*, 494 F.3d at 1115 (the U.S. Marshals Service properly withheld "names, addresses, telephone numbers, social security numbers, and other such private information regarding law enforcement officials"); *Miller v. Dep't of Justice*, 562 F. Supp. 2d 82, 120 (D.D.C. 2008) (the FBI "properly withheld the names of and identifying information about federal, state, local and foreign law enforcement officers and support staff under Exemption 7(C)" when those individuals may suffer "harassment and humiliation from disclosure of their identities"); *Callaway v. Dep't of Treasury*, Civ. A. No. 04-1506 (RWR), 2007 U.S. Dist. LEXIS 102512, at *35 (D.D.C. Aug. 31, 2007) (finding that U.S. Customs and Board Protection properly withheld law enforcement and administrative staff identifying information because disclosure could subject those individuals to harassment).

So too, is the identifying information of private individuals involved in the FBI's investigation of Ivankov—categories (ii) through (iii) and (vi) through (vii) above—protected from disclosure under Exemption 7(C). "The privacy interest at stake is substantial," *SafeCard Servs., Inc*. *v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991), because of potential harassment and embarrassment individuals may face from release of such information and "the stigma of being associated with any law enforcement investigation," *Calloway*, 2007 U.S. Dist. LEXIS 102512, at *36 (citing *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-75) (other citations omitted); Seidel Decl. ¶¶ 54-55, 58-60; *see also Sussman*, 494 F.3d at 1115 ("Names of private individuals are … generally exempt from disclosure …."); *Senate of P.R..*, 823 F.2d at 588 (targets of an investigation and "[o]ther persons involved in the investigation—witnesses, informants, and the investigating agents—. . . have a substantial interest in seeing that their participation remains secret.").

On the other hand, "[t]he public interest in disclosure is not just less substantial, it is insubstantial" because "th[is] type of information . . . is simply not very probative of an agency's behavior or performance." *SafeCard Servs.*, 926 F.2d at 1205 (citing *Senate of P.R.*, 823 F.2d at 588) (other citation omitted). Indeed, unless identifying information of private individuals "appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exemption from disclosure." *SafeCard Servs.*, 926 F.2d at 1206. Plaintiff does not allege any such evidence of misconduct exists in this case, *see* Compl., and thus the FBI properly redacted from disclosure

identifying information of third parties. Accordingly, the Court should conclude that the FBI

properly withheld the referenced eight categories of information under Exemptions 6 and 7(C).[10]

D.       **Exemptions 7(D) and (E)**

1.       Exemption 7(D)

The FBI also properly withheld pages in full and in part under Exemption 7(D),[11] which

exempts from mandatory disclosure law enforcement records the release of which "could

reasonably be expected to disclose the identity of a confidential source, including a State, local,

or foreign agency[.]" 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of

[E]xemption 7(D) if the source provided information under an express assurance of

confidentiality or in circumstances from which such an assurance could be reasonably

inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (*per curiam*) (citations and

internal quotation marks omitted). To establish an express assurance of confidentiality, an

agency "must 'point to . . . narrowly defined circumstances that . . . support the inference' of

confidentiality" instead of simply "claim[ing] that all sources providing information in the

course of a criminal investigation do so on a confidential basis." *Roth*, 642 F.3d at 1184 (citing

---

[10]      As noted, the FBI withheld the same information pursuant to Exemption 6. If the Court concludes that this information is properly withheld pursuant to Exemption 7(C), it need not separately determine if the information is also properly withheld pursuant to Exemption 6. *Rosenberg v. Dep't of Immigration & Customs Enforcement*, 13 F. Supp. 3d 92, 106 (D.D.C. 2014). The Department maintains, however, that the arguments in support of its 7(C) withholdings are equally applicable to support the same withholdings pursuant to Exemption 6.

[11]      The pages withheld in full have a bates-label ending in 20-22, 28-29, 31-35, 107-110, 120-132, 170, 199-211, 373, 388-390, 393, 439-440, 442-443, 447-456, 459-491, 495, 500, 505-506, 510-511, 514, and 516-523. *See* Seidel Decl. at Ex. Q pp. A1-A7. The pages withheld in part have a bates-label ending in 18, 30, 46, 90-91, 103, 106, 116-19, 133-38, 142-43, 155-56, 160, 171-72, 184-188, 190-93, 197-98, 221-26, 239-40, 245-48, 250-54, 257-59, 264, 266, 271-73, 277-78, 281-86, 289-90, 307-08, 314, 318-20, 324, 332, 334-35, 362-64, 368-71, 391-92, 441, 444, 446, 493-94, 497-99, 508-09, and 513. *See id.*

*Dep't of Justice v. Landano*, 508 U.S. 165, 171, 179, 181 (1993)). To determine whether an implied assurance of confidentiality exists, courts consider a number of factors, including: "'the character of the crime at issue,' 'the source's relation to the crime,' whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.'" *Id*. (quoting *Landano*, 508 U.S. at 179).

The FBI asserted six protected categories of information as a basis for withholding information under Exemption 7(D): third parties who provided information under express assurances of confidentiality; confidential source file numbers; foreign government agencies who provided information under express assurances of confidentiality; foreign government agencies who provided information under an implied assurance of confidentiality; confidential source symbol numbers; and individuals who provided information under an implied assurance of confidentiality.[12] Seidel Decl. ¶¶ 65-79. The FBI determined the existence of express assurances of confidentiality by positive indicators on documents—such as "(protect identity),""Confidential Human Sources" (CHSs), "Cooperating Witnesses" (CWs), source file, or symbol numbers—pertaining to third parties that indicate an express agreement based on the FBI's standard practice and written agreements with foreign agencies that evidence the existence of an express agreement. *Id*. ¶¶ 65-68, 71-72. The Seidel Declaration establishes an express grant of confidentiality to third parties and foreign agencies because it explains that the referenced items indicate that the source received an express assurance of confidentiality. *See*, *e.g.*, *Mays v. DEA*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (holding that codes included on

---

[12]    The referenced categories refer to numeric codes (b)(7)(D)-1, (b)(7)(D)-2, (b)(7)(D)-3, (b)(7)(D)-4, (b)(7)(D)-5, and (b)(7)(D)-6, respectively. *See* Seidel Decl. at Ex. Q p. A-1.

documents pertaining to third parties "plainly refers to 'notations on the face of [the] withheld document[s]'" and "indicat[es] that [the] source received an express assurance of confidentiality.") (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998)). The Department is therefore entitled to summary judgment with respect to information withheld concerning third parties and foreign agencies who provided information under express assurances of confidentiality.

Similarly, the Department is entitled to summary judgment regarding information withheld concerning foreign agencies and third parties who provided information under an implied assurance of confidentiality. According to the Seidel Declaration, the FBI inferred that foreign agencies provided information that is singular in nature "concerning Russian Organized Crime, specifically related to Ivankov[,]" under an implied assurance of confidentiality because the release of the information could reveal the foreign agencies' investigative focus and strategies to prevent threats, impede the foreign agencies' ability to recruit and retain sources, and subject the partnering agencies or nations to retribution for cooperating with the FBI. Seidel Decl. ¶¶ 73-74. Whereas here, disclosure of information provided by foreign agencies and their identity would have a chilling effect on the FBI's relationship with the foreign government agency, *Id*. ¶ 74, there exists an implied assurance of confidentiality that serves as a basis for withholding information. *Cf. Manna v. Dep't of Justice*, 832 F. Supp. 866, 877 (D.N.J. 1993) (finding "that confidentiality can reasonably be inferred" "where there has been disclosure of intelligence information regarding organized crime activity from local or state law enforcement personnel to federal agents").

An implied assurance of confidentiality also exists to protect from disclosure information provided by a third party regarding Russian Organized Crime because the third

party risked harm in providing the information due to being "within the orbit of suspected violent criminals, and such criminals (in the FBI's experience) typically seek to deter informants' cooperation with law enforcement through reprisal." Seidel Decl. ¶ 78; *Peay v Dep't of Justice*, Civ. A. No. 04-1859 (CKK), 2007 U.S. Dist. LEXIS 17586, at *18-20 (D.D.C. Mar. 14, 2017) (finding implied assurance of confidentiality existed for third parties who provided information related to an organized crime/drug investigation). Given the nature of the investigation, the FBI has demonstrated that "[t]he . . . risk of retaliation . . . warrant[s] an implied grant of confidentiality." *Mays*, 234 F.3d at 1329.

Further, the FBI properly protected confidential source file numbers of CHSs and permanent source symbol numbers given to FBI CHSs. The source file and symbol numbers are unique to CHSs who provided information relevant to the investigation discussed in the records Plaintiff requested and "report information to the FBI on a regular basis under express assurances of confidentiality." Seidel Decl. ¶¶ 69, 75. Disclosure of the source file or symbol numbers could enable criminals "knowledgeable of the FBI's investigations and the events and subjects involved" to possibly pinpoint CHSs, cause humiliation or harm to the CHSs and their families, and portray the FBI as unwilling to protect CHSs, potentially dissuading current or future CHSs from cooperating with the FBI. *Id.* ¶¶ 70, 76. Thus, the Court should find that the FBI properly applied redactions under Exemption 7(D). *See Shapiro v. CIA*, 247 F. Supp. 3d 53, 68 (D.D.C. 2017).

    2.    <u>Exemption 7(E)</u>

The FBI withheld 3 pages in full and 43 pages in part under Exemption 7(E).[13] Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but

---

[13]    The pages withheld in full have a bates-label ending in 296-297 and 348. *See* Seidel Decl. at Ex. Q pp. A1-A7. The pages withheld in part have a bates-label ending in 3, 5, 9, 11, 30, 37, 51,

only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)). The exemption allows for withholding information "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). "[A]n agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002). And, similar to Exemption 7(D), no balancing of public and private interests is required to uphold a withholding under Exemption 7(E). *See Lesar v. Dep't of Justice*, 636 F.2d 472, 486 n.80 (D.C. Cir. 1980).

The FBI asserted seven protected categories of information as a basis for withholding information under Exemption 7(E): (1) internal FBI secure telephone and fax numbers; (2) the identities and locations of FBI units and squads; (3) information concerning the targets, locations, monitoring, and types of devices utilized in surveillance operations conducted by the FBI in

---

101-02, 114, 138, 146, 153, 175, 193, 195, 221, 239, 258, 265, 271, 281, 283, 292-294, 298, 311, 323, 347, 362, 391-392, 438, 446, 502, 515, and 519-524. *See id*.

relation to the investigation; (4) sensitive investigative file numbers; (5) highly sensitive law enforcement techniques and procedures; (6) monetary payments for investigative techniques; and (7) database information and search results.[14] Seidel Decl. ¶¶ 83-97. First, disclosure of the FBI's secure telephone and fax numbers "used by the FBI during the performance of the FBI's law enforcement mission" "could subject the FBI to massive, disruptive, and misleading amounts of communications" and "enable circumvention of the law by allowing criminals to gain access to internal communication channels." Seidel Decl. ¶ 83. For those reasons, the FBI appropriately applied redactions to the FBI's secure telephone and fax numbers under Exemption 7(E). *See Ford v. Dep't of Justice*, 208 F. Supp. 3d 237, 252-53 (D.D.C. 2016) (finding the potential that the disclosure of FBI internal security phone number, internal email address or nonpublic intranet web address could disrupt the FBI's official business an adequate basis for withholding information under Exemption 7(E)); *Tracy v. Dep't of Justice*, 191 F. Supp. 3d 83, 96-97 (D.D.C. 2016) (concluding that the FBI properly withheld internal website addresses under Exemption 7(E) because disclosure "would increase the rise of cyberattacks" and "'disrupt or undermine FBI counter-terrorism initiatives'").

Second, the FBI withheld information that identifies FBI units and squads and office locations "involved in the investigation of Russian Organized Crime and Ivankov" that are "usually found in the administrative headings of internal FBI documents." Seidel Decl. ¶ 84. Disclosure of this information "would disrupt the method of the [FBI's] investigative process and deprive the FBI of valuable information" by "allow[ing] a subject to employ countermeasures targeted toward concealing . . . behavior" or "to avoid . . . certain activities in a particular location."

---

[14]     The referenced categories refer to numeric codes (b)(7)(E)-1, (b)(7)(E)-2, (b)(7)(E)-3, (b)(7)(E)-4, (b)(7)(E)-5, (b)(7)(E)-6, and (b)(7)(E)-7, respectively. *See* Seidel Decl. at Ex. Q p. A-1.

*Id.* Moreover, disclosure of the nonpublic units or squads who employ "particular investigative techniques and procedures" could allow for criminals to predict and then circumvent the FBI's use of these techniques and procedures. *Id.* Thus, the FBI appropriately applied redactions to the FBI units and squads and office locations under Exemption 7(E). *See Di Montenegro v. FBI*, Civ. A. No. 16-1400, 2017 U.S. Dist. LEXIS 96986, at *19-20 (E.D. Va. June 22, 2017) (finding that the "sensitive nature" of "information pertaining to the names, numbers, and/or alpha designators of certain FBI squads and units" justified withholding the information under Exemption 7(E)).

Regarding the third and fifth categories, the FBI withheld "information concerning targets, locations, monitoring, and types of devices utilized in surveillance operations" and highly sensitive law enforcement techniques and procedures related to the investigation of Russian Organized Crime and Ivankov because "the same techniques [are] utilized by the FBI in current criminal and national security investigations." Seidel Decl. ¶¶ 86, 91. Disclosure of the FBI's surveillance methodology and highly sensitive law enforcement techniques could render the techniques useless to the FBI and other law enforcement agencies by permitting criminals to evade surveillance, techniques and procedures as further explained by Michael Seidel.[15] *Id.* The FBI properly redacted information containing surveillance information and highly sensitive law enforcement techniques that could impede current or future investigations. *See Smith v. CIA*, 246 F. Supp. 3d 117, 128 (D.D.C. 2017) (finding "the FBI [was] justified [in] its FOIA exemption 7(E) withholding" of "information pertaining to a 'sensitive technique used by FBI agents to conduct criminal

---

[15]     The Department is unable to provide a more detailed description on the public record without releasing the very information the referenced exemption is designed to protect and which has been withheld under Exemption 7(E). Contemporaneously with its motion for summary judgment, the Department filed a motion for leave to submit a separate declaration from Michael Seidel for *ex parte in camera* review. Should the Court grant the Department's motion for leave, the Department will submit the separate declaration of Michael Seidel for *in camera* review.

investigations'"); *Durrani v. Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (Immigration and Customs Enforcement properly applied Exemption 7(E) "to 'surveillance' techniques 'not known to the subject or potential subject(s) of the ongoing investigation[]'" because "such information could impeded current and future investigations.").

With respect to the fourth category, the FBI withheld non-public investigative file numbers because repeated disclosure of those numbers could permit criminals and foreign adversaries to understand the FBI's investigative intelligence, the manner in which the FBI investigates certain detected activities, and thereby avoid detection and disruption by the FBI in order to circumvent the law. Seidel Decl. ¶ 90. These file numbers contain three portions:  file classification numbers, two letter office of origination codes, and numbers associated with unique investigative initiatives. *Id*. ¶ 87-89. The first portions "indicate the types of investigative/intelligence gathering programs to which these files pertain" and many of these "classification numbers are public," permitting the release of investigative records containing such information to reveal "the types of investigative techniques and procedures available to FBI investigators, and/or non-public facets of the FBI's investigative strategies." *Id*. ¶ 87. The second portions indicate "which FBI field office or overseas FBI legal attaché originated the investigations at issue," and revealing this information "could . . . risk disclosing unknown FBI investigations or intelligence gathering initiatives" and "possibly provide significant information about the FBI's failure to detect certain types of criminal behavior." *Id*. ¶ 88. The third portions consist "of the numbers given to the unique investigative initiatives [the sensitive investigate files] were created to memorialize" and the release of this information "would provide criminals with an idea of how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative strategies." *Id*. ¶ 89.

The FBI withheld information under the sixth category—monetary payments for investigative techniques—because revealing this information would reveal "the FBI's level of focus on certain types of law enforcement or intelligence gathering efforts . . . and essentially paint a picture as to where the FBI's strengths and weaknesses lie within the spectrum of illegal activities it is mandated to investigate." Seidel Decl. ¶ 92. Moreover, "this information would give criminals the opportunity to structure their activities in a manner which avoids the FBI's strengths and exploits its weakness." *Id*. ¶ 92. The FBI properly withheld information pertaining to sensitive file numbers and monetary payments for investigative techniques. *See Poitras v. DHS*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (finding that the FBI properly withheld "'sensitive file numbers or sub-file names'" and "'monetary payments for investigative techniques'" under Exemption 7(E) "to prevent the disclosure of FBI techniques and procedures and to prevent the dissemination of information that might be gleaned from those techniques and procedures.").

Finally, the FBI withheld information falling under the seventh category—sensitive data information and search results—to "protect the identities of sensitive investigative databases and database search results located through queries of these nonpublic databases used for law enforcement purposes by the FBI." Seidel Decl. ¶ 93. This information could "impede the FBI's effectiveness and potentially aid in circumvention of valuable investigative techniques" because the information would: (1) give "criminals insight into available tools and resources the FBI uses to conduct criminal and national security investigations"; (2) "reveal key information about FBI investigative strategies"; (3) "would . . . reveal the types of information most useful to FBI investigators"; and (4) "could jeopardize the FBI's investigative mission by revealing exactly where the FBI is storing and obtaining valuable investigative data." Seidel Decl. ¶¶ 93-97. The FBI properly withheld sensitive data information and search results under Exemption 7(E). *See*

*McClanahan v. Dep't of Justice*, 204 F. Supp. 3d 30, 53-55 (D.D.C. 2016) (finding that the FBI properly withheld "'database search results'" on the basis that "the disclosure of such information would tend to reveal investigate techniques and procedures that could 'enable criminals to employ countermeasures to avoid detection' and aid them in 'circumvent[ing] the law.'").

## III.   **The FBI Did Not Withhold Any Reasonably Segregable Information.**

"Even when FOIA exemptions apply, '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[,]'" and thus "[b]efore approving the application of a FOIA exemption, the . . . [C]ourt must make specific findings of segregability regarding the documents to be withheld." *Sussman*, 494 F.3d at 1116 (citing 5 U.S.C.§ 552(b), and *Summers v. Dep't of Justice*, 140 F.3d 1077, 1081 (D.C. Cir. 1998)) (other citation omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material" and need not "demonstrate that no segregable, nonexempt portions were withheld" unless "the requester successfully rebuts this presumption." *Id*. at 1117. This Plaintiff cannot do.

The disclosure of the FBI redacted information contained in the pages released in part "would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions." Seidel Decl. ¶ 100 (b.). The FBI withheld documents in full pursuant to Exemptions 6 and 7(C) after determining that "there was no segregable information releasable to Plaintiff beyond information that would identify the person mentioned, or would reveal identifying or potentially identifying information." *Id.* ¶ 50 n.14. In other circumstances, the FBI determined the documents were covered by one or more of the above-referenced FOIA exemptions or that exempt information was so intertwined with non-exempt information that "further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences that taken separately or together, would have minimal or no informational content." *Id.* ¶ 100 (c.);

*Mead Data Cent.*, *Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) ("[A]

court may decline to order an agency to commit significant time and resources to the separation of

disjointed words, phrases, or even sentences which taken separately or together have minimal or

no information content.").

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that this Court grant

Defendant's Motion for Summary Judgment.

Dated: July 2, 2020
         Washington, DC

                                        Respectfully submitted,

                                        MICHAEL R. SHERWIN
                                        Acting United States Attorney

                                        DANIEL F. VAN HORN, D.C. Bar #924092
                                        Chief, Civil Division


                                        By:          /s/ *Michael A. Tilghman II*
                                              _____
                                              MICHAEL A. TILGHMAN II
                                              D.C. Bar #988441
                                              Assistant United States Attorney
                                              555 Fourth Street, N.W.
                                              Washington, D.C. 20530
                                              (202)252-7113
                                              Michael.Tilghman@usdoj.gov

                                        *Attorneys for the United States of America*