UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-1058 (ABJ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Acting Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD") of the Federal Bureau of Investigation ("FBI"), located in Winchester, Virginia.  I became the Acting Section Chief on May 26, 2020.  I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to May 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel in the FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012.  In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide.  Prior to my joining the FBI, I served as a Senior Attorney with the U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA suits nationwide.  I also served as a U.S. Army Judge Advocate General's Corps Officer in various

1

assignments from 1994 to September 2006 culminating in my assignment as Chief of the General

Litigation Branch of the U.S. Army Litigation Division where I oversaw FOIA/PA litigation for

the U.S. Army. I am an attorney registered in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise approximately

239 FBI employees, supported by approximately 92 contractors, who staff a total of twelve (12)

FBI Headquarter ("FBIHQ") units and two (2) field operational service center units whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for

access to FBI records and information pursuant to the FOIA as amended by the OPEN Government

Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy

Act of 1974; Executive Order 13,526; Presidential, Attorney General, and FBI policies and

procedures; judicial decisions; and Presidential and Congressional directives.  The statements

contained in this declaration are based upon my personal knowledge, upon information provided

to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of the

FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request

for records related to Vyacheslav Ivankov.

(4)     In response to Plaintiff's request, the FBI processed a total of 524 pages of

responsive records subject to the FOIA.  Of these pages, the FBI released 63 pages in full, released

313 pages in part, and withheld 148 pages in full. The FBI withheld the 148 pages in full for one

of the following reasons: the pages were exempt in full pursuant to one or more applicable FOIA

Exemption(s) or the pages were found to be duplicative of other pages accounted for elsewhere in

the FBI's production.  In accordance with *Vaughn v. Rosen*, 424 F.2d 820 (D.C. Cir. 1973), this declaration is being submitted in support of Defendant's Motion for Summary Judgment, and provides the Court with a summary of the administrative history of Plaintiff's request; the procedures used to search for, review, and process responsive records; and the FBI's justification for withholding information in part or in full pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E), *see* 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

(5)     Plaintiff submitted an electronic FOIA request dated September 16, 2017 through the FBI's eFOIPA system,[1] seeking records concerning Vyacheslav Ivankov.  *See* **Exhibit A.**

(6)     By letter dated September 22, 2017, the FBI acknowledged receipt of Plaintiff's FOIA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1385162-000.  The FBI also informed Plaintiff of the following: Plaintiff submitted his request via the FBI's eFOIPA system; consistent with the FBI eFOIPA terms of service, future correspondence about the request would be provided in an electronic format; Plaintiff's public interest fee waiver was under consideration, Plaintiff would be advised of the decision at a later date, and if Plaintiff's fee waiver was not granted, Plaintiff would be responsible for applicable fees; and for the purpose of assessing any fees, the FBI determined that, as a general (all other) requester, Plaintiff would be charged applicable search and duplication fees.  Additionally, the FBI informed Plaintiff he could check the status of his request and/or contact the FBI with any questions at www.fbi.gov/foia.  Furthermore, Plaintiff could appeal the FBI's response to the Department of Justice ("DOJ"), Office of Information Policy ("OIP") within ninety (90) days of

---

[1] The eFOIPA system is an electronic means by which requesters can submit FOIA or PA requests to the FBI and is available through the FBI's public website, www.FBI.gov.

its letter, contact the FBI's FOIA Public Liaison, and/or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS").  *See* **Exhibit B.**

(7)     By letter dated September 22, 2017, the FBI denied Plaintiff's request for expedited processing because he did not provide enough information concerning the statutory requirements permitting expedition.  Additionally, the FBI informed Plaintiff he could contact the FBI with any questions at www.fbi.gov/foia.  Furthermore, Plaintiff could appeal the FBI's response to OIP within ninety (90) days of its letter, contact the FBI's FOIA Public Liaison, and/or seek dispute resolution services by contacting OGIS.  *See* **Exhibit C.**

(8)     By letter dated September 29, 2017, the FBI advised Plaintiff records responsive to his request were previously released under the provisions of the FOIA.  The FBI enclosed a CD containing 875 previously processed pages and a copy of the explanation of exemptions.  The FBI informed Plaintiff it was providing the release at no charge.  The FBI also advised Plaintiff additional records responsive to his subject exist and if dissatisfied with the FBI's release of previously processed records, he could request additional records for processing.  Furthermore, the FBI advised Plaintiff he could appeal the FBI's response to OIP within ninety (90) days of its letter, contact the FBI's FOIA Public Liaison, and/or seek dispute resolution services by contacting OGIS.  *See* **Exhibit D.**

(9)     By email dated October 6, 2017, Plaintiff contacted the FBI Public Liaison via email and requested additional records responsive to his request be processed.  *See* **Exhibit E.**

(10)     By email dated October 25, 2017, Plaintiff contacted the FBI Public Liaison to appeal the FBI categorizing him as a general (all other) requester.  Plaintiff requested he be categorized as a news media requester and cited his work with the Associated Press, and other

publications.   Following further correspondence with the public information officer for RIDS, Plaintiff submitted a dispute resolution request.  *See* **Exhibit F.**

(11)    By letter dated October 26, 2017, the FBI advised Plaintiff his public interest fee waiver request was denied because he did not provide enough information concerning the statutory requirements permitting a waiver of fees.  *See* **Exhibit G.**

(12)    By separate letter dated October 26, 2017, the FBI informed Plaintiff it had located approximately 37,934 pages of records responsive to his request.  By DOJ regulation, the FBI notifies requesters when anticipated fees exceed $25.00.  Furthermore, the FBI informed Plaintiff because he submitted his request via the FBI's eFOIPA system, all releases would be made to him electronically, and he would owe $1,140.00 in duplication fees (76 releases at $15 each). Additionally, the FBI advised Plaintiff this was only an estimate and actual charges could be less. Though no payment was required at the time, the FBI informed Plaintiff he must notify the FBI within thirty (30) days from the date of its letter of Plaintiff's willingness to pay the assessed fees. The FBI also provided Plaintiff an opportunity to reduce the scope of his request to reduce the cost and processing time associated with his request.  Finally, the FBI advised Plaintiff he could appeal the FBI's response to OIP within ninety (90) days of its letter, contact the FBI's Public Liaison, and/or seek dispute resolution services by contacting OGIS.  *See* **Exhibit H.**

(13)    By email dated October 26, 2017, Plaintiff contacted the FBI Public Liaison asking whether switching his fee category to media requester would reduce the duplication costs.  In a follow up email dated November 15, 2017, Plaintiff requested a status update regarding his FOIA request as well the status of his request to change his fee category.  *See* **Exhibit I.**

(14)     By email dated December 4, 2017, the FBI FOIA negotiation team reached out to Plaintiff concerning his interest in reducing the size of his request and provided a further point of contact to discuss narrowing the scope of his request.  *See* **Exhibit J.**

(15)     The FBI sent Plaintiff a letter dated January 25, 2018, documenting Plaintiff's telephone conversation with the FBI negotiation team on January 24, 2018 concerning reducing the size of his request.  The letter stated that through negotiation, Plaintiff's request was reduced from a large-track request of 37,934 pages to a medium track request of 528 pages, which would speed the processing time.  *See* **Exhibit K.**

(16)     By email dated March 14, 2019, Plaintiff contacted the FBI FOIA Public Liaison seeking copies of administrative records from his dispute resolution request concerning his request to be re-categorized as a media requester.  *See* **Exhibit L.**

(17)     By letter dated March 20, 2019, the FBI advised Plaintiff his requester fee category had been changed to educational institution, noncommercial scientific institution or representative of the news media requester and he would be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).  The FBI also advised Plaintiff he could appeal the FBI's determination to OIP within ninety (90) days of its letter, contact the FBI's Public Liaison, and/or seek dispute resolution services by contacting OGIS.  *See* **Exhibit M.**

(18)     On or about April 16, 2019, Plaintiff filed the present complaint in the U.S. District Court for the District of Columbia.  *See* **ECF No. 1**.

(19)     By letter dated July 31, 2019, the FBI responded to Plaintiff's FOIA request by reviewing 270 pages and releasing 208 pages to Plaintiff at no charge.  The FBI advised Plaintiff it withheld information pursuant to FOIA Exemptions (b)(3) [Rule 6(e), Federal Rules of Criminal Procedure and 18 U.S.C. § 2518], (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E). Additionally, the FBI

6

advised Plaintiff it was consulting with other government agencies ("OGAs") concerning documents which originated with, or contained information concerning the OGAs.  A copy of the released records can be made available to the Court upon request.  *See* **Exhibit N.**

(20)    By letter dated August 30, 2019, the FBI further responded to Plaintiff's FOIA request by reviewing 254 pages and releasing 143 pages at no charge.  The FBI advised Plaintiff it withheld information pursuant to FOIA Exemptions (b)(3) [Rule 6(e), Federal Rules of Criminal Procedure;  18 U.S.C. § 2518 and 50 U.S.C. § 3024(i)(1)],  (b)(6),  (b)(7)(C),  (b)(7)(D)  and (b)(7)(E). Additionally, the FBI advised Plaintiff it was consulting with other government agencies ("OGAs") concerning documents which originated with, or contained information concerning the OGAs.  The FBI also advised Plaintiff he could appeal the FBI's determination to OIP within ninety (90) days of its letter and/or seek dispute resolution services by contacting OGIS.  A copy of the released records can be made available to the Court upon request.  *See* **Exhibit O.**

(21)    By letter dated September 30, 2019, the FBI further responded to Plaintiff's FOIA request by reviewing 27 pages and releasing 24 pages at no charge.  The FBI advised Plaintiff it withheld information pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E). The FBI informed Plaintiff the enclosed release constituted pages previously withheld for consultation with other government agencies, and deletions had been made by the U.S. Citizenship and Immigration Service (USCIS) and United State Marshals Service (USMS). The FBI informed Plaintiff the release was the final release of information responsive to his request.  Finally, the FBI also advised Plaintiff he could appeal the FBI's determination to OIP within ninety (90) days of its letter, seek dispute resolution services by contacting OGIS, and/or contact the FBI's Public Liaison.  A copy of the released records can be made available to the Court upon request.  *See* **Exhibit P.**

## THE FBI'S CENTRAL RECORDS SYSTEM

(22)    The Central Records System ("CRS") is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI Field Offices, and FBI Legal Attaché Offices ("Legats") worldwide.

(23)    The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories.  The broad array of CRS file classification categories include types of criminal conduct, and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters.  For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number ("UCFN") consisting of three sequential components:  (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[2]  Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order which the document is added to the file, typically in chronological order.

---

[2]  For example, in a fictitious file number of "11Z-HQ-56789;" the "11Z" component indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789"is the assigned case specific file number.

## THE CRS GENERAL INDICES AND INDEXING

(24)     The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS.  The CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval.  The entries in the general indices fall into two category types:

> A.  Main entry.  A main index entry is created for each individual or non-individual that is the subject or focus of an investigation.  The main subject(s) are identified in the case title of most documents in a file.

> B.  Reference entry.  A reference index entry is created for individuals or non-individuals associated with the case but are not the main subject(s) or focus of an investigation.  Reference subjects are typically not identified in the case title of a file.

(25)     FBI employees may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* a terrorist attack or bank robbery).  Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval. Accordingly, the FBI does not index every individual name or other subject matter in the general indices.

## AUTOMATED CASE SUPPORT

(26)     Automated Case Support ("ACS") was an electronic, integrated case management system that became effective for FBIHQ and all FBI Field Offices and Legats on October 1, 1995. As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.  ACS had an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions.[3]

(27)     The Universal Index ("UNI") was the automated index of the CRS and provided all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching.  Individual names were recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event.  Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompassed data that was already indexed into the prior automated systems superseded by ACS.  As such, a UNI index search in ACS was capable of locating FBI records created before its 1995 FBI-wide implementation in both paper and electronic format.[4]

---

[3] ACS was, and the next generation Sentinel system is, relied upon by the FBI daily to fulfill essential functions such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries, and security screening, to include Presidential protection.

[4] Older CRS records that were not indexed into UNI as a result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices."

## ACS AND SENTINEL

(28)     Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012.  Sentinel provides a web-based interface to FBI users, and it includes the same automated applications that were utilized in ACS.  After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace ACS and its relevance as an important FBI search mechanism.   Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval.

(29)     On August 1, 2018, the ACS case management system was decommissioned and ACS data was migrated into Sentinel including the ACS indices data and digitized investigative records formerly available in ACS.  Moreover, Sentinel retains the index search methodology and function whereby the CRS is queried via Sentinel for pertinent indexed main or reference entries in case files.  All CRS index data from the UNI application previously searched via ACS is now searched through the "ACS Search" function within Sentinel.

(30)     Considering ACS was still operational at the time the FBI conducted searches for Plaintiff's request, RIDS practice was to begin its FOIPA searching efforts by conducting an index search via ACS/UNI.  When appropriate (when records were reasonably expected to have been created on or after July 1, 2012) RIDS then builds on its ACS index search by conducting an index search of Sentinel records to ensure it captured all relevant data indexed after the implementation of Sentinel.  These two index searches, in most cases represented the most reasonable means for the FBI to locate records potentially responsive to FOIPA requests.  This is because these automated indices offer access to a comprehensive, agency-wide set of indexed data on a wide

variety of investigative and administrative subjects.  Currently, the FBI's automated indices consist of millions of searchable records and are updated daily with material newly indexed in Sentinel.

(31)    Additionally, it is important to note the location of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive to the subject. Index searches are the means by which potentially responsive records are located, but ultimately, a FOIPA analyst must consider potentially responsive indexed records against the specific parameters of individual requests.  Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

## ADEQUACY OF SEARCH

(32)    <u>Index Searching</u>.  To locate CRS information, RIDS employs an index search methodology.  Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval to serve its primary law enforcement and intelligence gathering functions.  Given the broad range of indexed material in terms of both time frame and subject matter that it can locate in FBI files, the FBI automated indices available in ACS was the mechanism RIDS employed at the time of Plaintiff's request to conduct CRS index searches.

(33)    <u>CRS Search and Results</u>. In response to Plaintiff's request, RIDS conducted a CRS index search for potentially responsive records employing the ACS/UNI.[5] RIDS searched the ACS index using the terms "Ivankov, Vyacheslav, Kirillovich," "Ivankov, Vyacheslav, K," and "Ivankov, Vyacheslav." As a result of these search efforts, RIDS located one main file record.

---

[5] RIDS did not conduct a search of Sentinel because Vyacheslav Ivankov's  death in 2009 predated Sentinel, which was created in 2012.

(34)   <u>Plaintiff's Narrowed Scope</u>.  The FBI, after advising Plaintiff the estimated volume for his request was 37,934 pages of records responsive to his request, contacted him to see if he was interested in reducing the scope of his request.  During negotiations, Plaintiff agreed to limit his request to the next two file sections of the New York Field Office file from which he had previously received responsive material.  Through this negotiation, the FBI and Plaintiff were able to reduce the volume of his request from approximately 37,934 pages to approximately 528 potentially responsive pages.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(35)   The FBI processed the negotiated set of documents responsive to Plaintiff's request to achieve maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information.  The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff.  Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information protected by the FBI.  The FBI numbered all pages of its production consecutively as "19-cv-1058(FBI)-1 through 19-cv-1058(FBI)-524."  On the pages released in full or in part, these numbers are typically located at the bottom right corner of each page.  Additionally, the FBI is including an index at **Exhibit Q** to explain where within its productions of responsive records it withheld pages in their entirety or withheld information in part and its basis for doing so; and to explain on which pages it asserted various FOIA Exemptions.[6]

---

[6] If requested by the Court, the FBI can provide copies of all records processed and released to the Court for *in camera* inspection.

(36)     Additionally, on the Bates-numbered documents provided to Plaintiff, and for pages withheld in full and accounted for in the FBI's index, the FBI further categorized its application of Exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA.   Specifically, the FBI applied numerical codes coinciding with various categories of exempt information.   These coded categories are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the FOIA Exemptions it has asserted to withhold the material.   The coded, Bates-numbered pages together with this declaration demonstrate all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(37)     Each instance of information withheld pursuant to a FOIA Exemption is accompanied by a coded designation corresponding to the categories listed below.   For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy.   The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and Identifying Information Pertaining to FBI Special Agents and Professional Staff."

(38)     Listed below are the categories used to explain the FOIA Exemptions the FBI asserted to withhold information:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| CODED CATEGORIES | INFORMATION WITHHELD |
| Exemption 3 | Information Protected by Statute |
| (b)(3)-1 | 18 U.S.C §§ 2510-20 (Title III of the Omnibus Crime Control and Safe Streets Act) |
| (b)(3)-2 | Federal Grand Jury Information - Federal Rule of Criminal Procedure 6(e) |
| (b)(3)-3 | National Security Act of 1947 - 50 U.S.C. § 3024(i)(1) |
| Exemptions 6 & 7(C) | Unwarranted/Clearly Unwarranted Invasion of Personal Privacy |

| (b)(6)-1 and (b)(7)(C)-1 | Names and/or Identifying Information Pertaining to FBI Special Agents and Professional Staff |
|---|---|
| (b)(6)-2 and (b)(7)(C)-2 | Names and Identifying Information of Third Parties of Investigative Interest |
| (b)(6)-3 and (b)(7)(C)-3 | Names and Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 and (b)(7)(C)-4 | Names and Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-5 and (b)(7)(C)-5 | Names of Local Law Enforcement Personnel |
| (b)(6)-6 and (b)(7)(C)-6 | Names and/or Identifying Information of 3rd Parties who Provided Information *[cited at times in conjunction with 7(D)]* |
| (b)(6)-7 and (b)(7)(C)-7 | Names and Identifying Information Regarding Third Party Victims |
| (b)(6)-8 and (b)(7)(C)-8 | Names of Foreign Government Agents/Personnel |
| **Exemption 7(D)** | **Confidential Source Information** |
| (b)(7)(D)-1 | Names, Identifying Information of, and Information Provided by Individuals Under Express Assurances of Confidentiality |
| (b)(7)(D)-2 | Confidential Source File Numbers |
| (b)(7)(D)-3 | Foreign Government Agency Information Under Express Confidentiality |
| (b)(7)(D)-4 | Foreign Government Agency Information Under Implied Confidentiality |
| (b)(7)(D)-5 | Confidential Source Symbol Numbers |
| (b)(7)(D)-6 | Name, Identifying Information of, and Information Provided by an Individual Under an Implied Assurance of Confidentiality |
| **Exemption 7(E)** | **Law Enforcement Techniques and Procedures** |
| (b)(7)(E)-1 | Internal FBI Secure Telephone and Fax Numbers |
| (b)(7)(E)-2 | Identities and/or Locations of FBI Units and Squads |
| (b)(7)(E)-3 | Information Regarding Targets, Dates, and Scope of Surveillance |
| (b)(7)(E)-4 | Sensitive Investigative File Numbers |
| (b)(7)(E)-5 | Highly Sensitive Law Enforcement Techniques and Procedures |
| (b)(7)(E)-6 | Monetary Payments for Investigative Techniques |
| (b)(7)(E)-7 | Database Information and Search Results |

## EXEMPTION 3 - INFORMATION PROTECTED BY STATUTE

(39)     5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

### **(b)(3)-1: 18 U.S.C §§ 2510-20 (Title III of the Omnibus Crime Control and Safe Streets Act)**

(40)     The FBI asserted Exemption (b)(3) to protect information specifically exempted pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III").  Title III concerns the Court-ordered lawful interception and recording of telephone communications and vocal communications recorded by electronic microphone surveillance by a federal law enforcement agency in criminal investigations.  As relevant to 5 U.S.C. § 552 (b)(3)(B), the Omnibus Crime Control and Safe Streets Act of 1968 is a statute[7] enacted before the date of enactment of the OPEN FOIA Act of 2009.[8]  Title III specifically exempts from disclosure certain information concerning Court-ordered interceptions and recordings by federal law enforcement agencies, including the identities of targeted individuals, targeted locations of microphones, the identities of participants in intercepted and/or recorded conversations, and the content of these intercepted and recorded conversations.  Essentially, Title III protects from release the "who, what, when, where, and how" of the intercept.

(41)     Specifically, the information withheld from disclosure pursuant to the provisions of Title III consists of the identities of the individuals targeted for interception through wiretap, and information obtained via the Title III wiretap.  Accordingly, since such information is specifically exempted pursuant to 18 U.S.C. §§ 2510-2520, the FBI properly asserted FOIA Exemption (b)(3) to withhold this information from disclosure.

---

[7] The Omnibus Crime Control and Safe Streets Act of 1968 was enacted June 19, 1968 (Pub. L. No. 90-351, 82 Stat. 212).

[8] The OPEN FOIA Act of 2009 was enacted October 28, 2009, Pub.L. 111-83, 123 Stat. 2142, 2184.

**(b)(3)-2: Federal Grand Jury Information – Federal Rule of Criminal Procedure 6(e)**

(42)   The FBI asserted Exemption (b)(3) to protect Federal Grand Jury information pursuant to Federal Rule of Criminal Procedure 6(e).  As relevant to 5 U.S.C. § 552(b)(3)(B), Rule 6(e) is a statute[9] enacted before the date of enactment of the OPEN FOIA Act of 2009.   It is well established Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained.  Records responsive to Plaintiffs' requests detail information about one or more federal grand juries empaneled in relation to the investigation at issue.  Specifically, the investigative file contains information about the names of recipients of federal grand jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and the results provided by the companies in response to a federal grand jury subpoena.  Wherever the FBI protected this information, it found a clear nexus to federal grand jury proceedings on the face of the responsive documents, and any disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury, which the FBI is precluded from disclosing.  Thus, the FBI properly withheld this information pursuant to Exemption (b)(3), in conjunction with Rule 6(e).

---

[9] As prescribed by 18 U.S.C. § 3771 (subsequently repealed by Pub.L. 100-702, Title IV, § 404(a)(1) (Nov. 19, 1988) and replaced by 28 U.S.C. § 2074), proposed rules become effective ninety days after the Chief Justice reports them to Congress.  By order of April 26, 1976, the Supreme Court adopted amendments to the Federal Rules of Criminal Procedure which included Rule 6(e) and reported the amendments to Congress.  Congress voted to delay the effective date of several of the proposed rules, to include Rule 6(e), "until August 1, 1977, or until and to the extent approved by Act of Congress, whichever is earlier."  Pub.L. No. 94-349 § 1, 90 Stat. 822 (1976). Subsequently, Congress, by statute, enacted a modified version of Rule 6(e).  *See* Pub.L. No. 95-78, § 2(a), 91 Stat. 319 (1977), FED. R. CRIM. P. 6(e).

### (b)(3)-3 - National Security Act of 1947, 50 U.S.C. § 3024 (i)(1)

(43)    The FBI asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA").  Section 102A(i)(1) of the NSA provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods."[10]  As relevant to U.S.C. § 552(b)(3)(B), the NSA was enacted before the date of enactment of the OPEN FOIA Act of 2009.  On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by Section 102A(i)(1) of the NSA is absolute.  *See CIA v. Sims*, 471 U.S. 159 (1985).

(44)    In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(1).  In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[11]  The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods.

(45)    Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be

---

[10] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

[11] Intelligence Community Directive (ICD) 700, date June 7 2012, at ¶ 2a.

revealed if any of the withheld information is disclosed to plaintiffs.  Therefore, the FBI is prohibited from disclosing such information under Section 102A(i)(1) of the NSA.

## EXEMPTION 7 THRESHOLD

(46)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.  Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose(s).

(47)    The records at issue were compiled in furtherance of the FBI's investigation of Vyacheslav Ivankov and his role in and activities with Russian organized crime. The subject was a dominant figure in the Russian/Eurasian organized crime community in the United States, and led an international criminal organization that operated in numerous cities in Europe, Canada, and the United States. Ivankov was convicted of violating 18 U.S.C. § 371 (Conspiracy to commit offense or to defraud United States), 18 U.S.C. § 1325(b) (Improper entry by alien – time and place), 18 U.S.C. § 2 (Principals – whomever commits crimes against United States can be charged as a principal in that crime) and 18 U.S.C. § 1622 (Subornation of perjury) in July of 1996. Considering these records were compiled to document the FBI's investigation of potential crimes, the FBI determined they were compiled for a law enforcement purposes.

**FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)**
**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND**
**UNWARRANTED INVASION OF PERSONAL PRIVACY**

(48)     Exemption 6 exempts from disclosure "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of

Exemption 6.

(49)     Exemption 7(C) similarly exempts from disclosure "records or information

compiled for law enforcement purposes [when disclosure] could reasonably be expected to

constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).[12]

(50)     When withholding information pursuant to these two exemptions, the FBI is

required to balance the privacy interests of the individuals mentioned in these records against any

public interest in disclosure.  In asserting these exemptions, each piece of information was

scrutinized to determine the nature and strength of the privacy interest of every individual whose

name and/or identifying information appears in the documents at issue.  When withholding the

information, the individual's privacy interest was balanced against the public's interest in

disclosure.  For purposes of these exemptions, a public interest exists only when information about

an individual, their name, or their identifying information[13] would shed light on the FBI's

---

[12] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).  Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under both exemptions.

[13] Hereafter, identifying information includes the following: dates of birth, residences, telephone numbers, social security or other identification numbers.

performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  In each instance where information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.[14]

### (b)(6)-1 and (b)(7)(C)-1: Names and Identifying Information of FBI Special Agents and Professional Staff

(51)     Pursuant to Exemption category (b)(6)-1 and (b)(7)(C)-1, the FBI protected the names and identifying information of FBI Special Agents ("SAs") and professional staff.   These FBI SAs and professional staff were responsible for conducting, supervising, and/or maintaining the investigation related to Ivankov, reflected in the documents responsive to Plaintiff's request. These responsibilities included, but were not limited to the following: coordinating/completing tasks in support of the FBI's investigative and administrative functions, compiling information, conducting interviews, and/or reporting on the status of the investigation.

(52)     Assignments of SAs to any particular investigation are not by choice.  Publicity, adverse or otherwise, arising from a particular investigation, may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work.  The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative activities, whether or not they are currently employed by the FBI.  FBI SAs conduct official inquiries into various criminal

---

[14] In the instances when the FBI withheld a page in full pursuant to Exemptions 6 and 7(C) only, the FBI determined there was no segregable information releasable to Plaintiff beyond information that would identify the person mentioned, or would reveal identifying or potentially identifying information.

and national security violation cases.  The publicity associated with the release of an SA's identity

in connection with a particular investigation could trigger hostility toward a particular SA.  During

the course of an investigation, an SA may engage with all strata of society, conducting searches

and making arrests, both of which result in reasonable but nonetheless serious disturbances to

people and their lives.  Persons targeted by such investigations/investigative activities, and/or those

sympathetic to those targeted, could seek to inflict violence on an SA based on their participation

in an investigation.  This is because an individual targeted by such law enforcement actions may

carry a grudge against those involved with the investigation, which may last for years.  These

individuals may seek revenge on SAs and other federal employees involved in a particular

investigation.  There is no public interest served by disclosing the SAs' identities because their

identities would not, themselves, significantly increase the public's understanding of the FBI's

operations and activities.  Thus, disclosure of this information would constitute a clearly

unwarranted invasion of their personal privacy; and the FBI properly withheld the names and

identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

(53)     The FBI also withheld the names and identifying information of FBI professional

staff pursuant to Exemptions 6 and 7(C).  These FBI professional staff were assigned to handle

tasks related to the investigation of Ivankov, and his role in Russian Organized Crime.  Similar to

FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in specific

investigations.  Furthermore, these FBI professional staff were, and possibly are, in positions of

access to information regarding official law enforcement investigations, and therefore could

become targets of harassing inquiries for unauthorized access to investigations if their identities

were released.  Thus, these individuals maintain substantial privacy interests in not having their

identities disclosed.  In contrast, the FBI concluded that no public interest would be served by

disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities.  Accordingly, after balancing these profession staff employees' substantial privacy interests against the non-existent public interest, the FBI determined disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy. Therefore, the FBI properly withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C).

### (b)(6)-2 and (b)(7)(C)-2: Names and Identifying Information of Persons of Investigative Interest

(54)     Pursuant to Exemptions (b)(6)-2 and (b)(7)(C)-2, the FBI protected the names and identifying information of third parties who were of investigative interest to the FBI.  Being identified as a subject of FBI investigative interest carries a strong negative connotation and a stigma, whether or not these individuals ever committed criminal acts.  Release of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention.  Furthermore, it could result in professional and social repercussions, due to resulting negative stigmas. Accordingly, the FBI determined these individuals maintain substantial privacy interests in not having their identities disclosed.  In contrast, disclosing personal information about these individuals would not significantly increase the public's understanding of the FBI's performance of its mission and so the FBI concluded that there was no public interest here sufficient to override these individuals' substantial privacy interests.  For these reasons, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

## (b)(6)-3 and (b)(7)(C)-3: Names and Identifying Information of Third Parties Merely Mentioned

(55)     Pursuant to Exemptions (b)(6)-3 and (b)(7)(C)-3, the FBI protected the names and identifying information of third parties who were merely mentioned in the investigative records responsive to Plaintiff's request.  The FBI has information about these third parties in its files because these individuals were tangentially mentioned in conjunction with FBI investigative efforts.  These individuals were not of investigative interest to the FBI.  These third parties maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with a FBI law enforcement matter.  Considering the FBI is an investigative and intelligence agency, disclosure of these third parties' names and/or identifying information in connection with an FBI record carries an extremely negative connotation.  Disclosure of their identities would subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them.  The FBI then considered whether there was any public interest that would override these privacy interests, and concluded that disclosing information about individuals who were merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the operations and activities of the FBI.  Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

## (b)(6)-4 and (b)(7)(C)-4: Names and Identifying Information of Non-FBI Federal Government Personnel

(56)     Pursuant to Exemptions (b)(6)-4 and (b)(7)(C)-4, the FBI protected the names and identifying information of non-FBI federal government personnel who provided information to or otherwise assisted the FBI in its investigation of Ivankov.  The rationale for protecting the identities of other government employees is the same as the rationale for protecting the identities of FBI

employees.  *See* ¶¶ 51-53, *supra*.  Publicity, adverse or otherwise, concerning the assistance of these other agency employees in an FBI investigation would seriously impair their effectiveness in assisting or participating in future FBI investigations.  The privacy consideration also protects these individuals from unnecessary, unofficial questioning as to the FBI investigation.  It is possible for a person targeted by law enforcement action to carry a grudge which may last for years, and to seek revenge on the personnel involved in the investigations at issue in these FBI records.  The publicity associated with the release of their names and/or identifying information in connection with these investigations could trigger hostility towards them by such persons.  Therefore, these employees maintain substantial privacy interests in not having their identities disclosed in this context.  In contrast, there is no public interest to be served by the disclosure of these employees' names and/or identifying information because their identities, by themselves, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities.  Accordingly, the FBI properly protected these employees' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

### (b)(6)-5 and (b)(7)(C)-5: Names of Local Law Enforcement Personnel

(57)    Pursuant to Exemptions (b)(6)-5 and (b)(7)(C)-5, the FBI protected the names of local law enforcement employees.  These employees were acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in the records responsive to Plaintiff's requests.  The rationale for protecting the identities of FBI SAs and professional staff discussed in ¶ ¶ 51-53, *supra*, applies equally to the names of these local law enforcement employees.  Release of the identities of these law enforcement employees could subject them as individuals to unnecessary and unwelcome harassment that would invade their privacy, and could

cause them to be targeted for reprisal.  In contrast, disclosure of this information would serve no public interest because it would not shed light on the operations and activities of the FBI. Accordingly, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

### (b)(6)-6 and (b)(7)(C)-6: Names and Identifying Information of Third Parties who Provided Information

(58)    Pursuant to Exemptions (b)(6)-6 and (b)(7)(C)-6, the FBI protected the names and identifying information of individuals who were interviewed, and/or provided information by other means, to the FBI during the course of its investigation of Ivankov.

(59)    The FBI has found information provided by individuals based on their personal knowledge is one of the most productive investigative tools for law enforcement agencies.  The largest obstacle to successfully obtaining such information critical to FBI investigations, through an interview or otherwise, is fear by the individuals providing the information their identities will be exposed.  Such exposure, in conjunction with their cooperation with law enforcement, could lead to harassment, intimidation by investigative subjects, legal or economic detriment, possible physical harm, or even death. To surmount their fear of reprisal, and the resulting tendency to withhold information, persons who provide such information to the FBI must be assured their names and personally-identifying information will be held in the strictest confidence.  Thus, the FBI has determined these individuals maintain substantial privacy interests in not having their identities disclosed.  In contrast, the FBI could identify no public interest in the disclosure of this information because disclosure of these third parties' names and identifying information would not shed light on or significantly increase the public's understanding of the operations and activities of the FBI.  Furthermore, the continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the public might derive from disclosure of the names of those who cooperated with the FBI.  Accordingly,

the FBI properly protected these individuals' privacy interests pursuant to Exemptions 6 and 7(C). The FBI is also relying on Exemption 7(D) to protect this information in many instances.

### (b)(6)-7 and (b)(7)(C)-7: Names and Identifying Information of Third-Party Victims

(60)     Pursuant to Exemptions (b)(6)-7 and (b)(7)(C)-7, the FBI protected the names and identifying information of third-party victims.  Releasing these individuals' identities in the context of these investigative records would cause embarrassment, as well as unsolicited and unnecessary attention to be focused on these individuals.  Such a release could force them to relive emotionally trying events, causing further invasion of their privacy, in excess of the harms they've already been forced to endure.  Thus, these victims maintain strong privacy interests in the protection of such personal information.  Furthermore, there is no legitimate public interest to be served by releasing the identities of these victims because their identities, themselves, would not shed light on the operations and activities of the FBI.  The FBI determined disclosure of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy, and consequently withheld this information pursuant to FOIA Exemptions 6 and 7(C).

### (b)(6)-8 and (b)(7)(C)-8: Names of Foreign Government Agents/Personnel

(61)     Pursuant to Exemptions (b)(6)-8 and (b)(7)(C)-8, the FBI protected the names of personnel or law enforcement agents of foreign governments assisting the FBI in its investigation of Ivankov.  These employees were acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in the records responsive to Plaintiff's requests.  The rationale for protecting the identities of FBI SAs and professional staff discussed in ¶ ¶ 51-53, *supra*, applies equally to the names of these foreign government employees.  Release of the identities of these partners could subject them as individuals to unnecessary and unwelcome harassment that would invade their privacy, and could cause them to be targeted for reprisal.  In

27

contrast, disclosure of this information would serve no public interest because it would not shed light on the operations and activities of the FBI.  Accordingly, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

## EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION

(62)    Exemption 7(D) protects "records or information compiled for law enforcement purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

(63)    Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term.  Others are interviewed and/or provide information under implied assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality may be inferred).  In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI.  Information provided by these sources is singular in nature, and if released, could reveal their identities.  The FBI has learned through experience that sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal.  The FBI has also learned that sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public.  Sources

providing information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence.

(64)    The release of a source's identity would forever eliminate that source as a future means of obtaining information.  In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.  Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws.

### (b)(7)(D)-1: Names, Identifying Information of, and Information Provided by Individuals under Express Assurances of Confidentiality

(65)    Pursuant to Exemption (b)(7)(D)-1, the FBI protected the names, identifying information of, and information provided by third parties to the FBI under express grants of confidentiality.  When processing the records at issue, the FBI found evidence these individuals, who provided specific and detailed information that is singular in nature, 1) either requested their identities not be revealed; or 2) FBI investigators would have, by standard practice, expressly promised these third parties their identities and the information they provided would remain confidential.

(66)    Providing express assurances of confidentiality is essential to the FBI's ability to obtain relevant and accurate information from Confidential Human Sources ("CHSs").  Without these assurances by the FBI, those with access to information critical to FBI investigations may be reluctant to provide information or may modify their statements in order to lessen the severity of any backlashes; therefore, the FBI must provide credible assurances of confidentiality to these individuals in order to obtain factual, relevant, and timely information.  Release of these sources' identities and/or any singular information they provided may lead to the revelation of their

identities and would also display unwillingness by the FBI to honor its assurances of confidentiality to current and future CHSs.  Therefore, releasing this information would have a lasting negative impact on the FBI's informant program – it would greatly hinder the FBI's ability to recruit and maintain CHSs willing to provide accurate and relevant information pertaining to criminal activities.

(67)     The FBI was able to determine its investigators granted certain individuals within the records at issue express assurances of confidentiality because it located positive indicators they were official, established FBI informants.  In some instances, the sources' names were annotated with the description "(protect identity)" or the sources were described as being "Confidential Human Sources" ("CHSs") or a "Cooperating Witnesses" ("CWs").  These designations of CW or CHS are positive indications these individuals entered into official, confidential relationships with the FBI in which they would have, by standard FBI practice, been provided with express assurances of confidentiality.  In other instances, the FBI located sources given source file numbers and/or source symbol numbers.[15]  Official FBI informants are given informant files to house the information they provide during their work as confidential informants.  Thus, the existence of a source file number used to house information provided by an individual can be seen as proof the individual was an official, established confidential source, and received an express grant of confidentiality.   Another indication of official informant status is the replacement of an individual's name with a symbol source number, a tool used by FBI investigators to hide the identities of its formally-established, confidential informants within FBI records.  Thus, the use of

---

[15] *See* ¶¶ 69-70, 75-76 *infra* for further description of source file numbers and source symbol numbers.

a symbol source number is also a positive indication sources were officially established and supplied with express grants of confidentiality.

(68)    In sum, the FBI located evidence certain individuals supplied information to the FBI with express assurance their names, identifying information, and the information they provided would be held in confidence.  Release of such information would endanger these CHSs and cause great detriment to the FBI's ability to recruit and maintain reliable CHSs; thus, the FBI protected this information pursuant to Exemption 7(D).

## (b)(7)(D)-2: Confidential Source File Numbers

(69)    Pursuant to Exemption (b)(7)(D)-2, the FBI protected the confidential source file numbers of permanent confidential human sources ("CHSs").  Confidential source file numbers are administrative tools that facilitate the retrieval and storage of information supplied by CHSs. Similar in use to confidential source symbol numbers, these confidential source file numbers are assigned to CHSs who report information to the FBI on a regular basis under express assurances of confidentiality.   Confidential source file numbers are unique to particular confidential informants.  These numbers are typically recorded in investigative records, whenever information provided by a CHS is memorialized in the investigative record.  Copies of such documents containing source reporting are characteristically placed within investigative files and also copied into the informant's assigned confidential source file number.  Therefore, such documents are usually annotated with both the investigative file number(s) relevant to the source's reporting, and the source's assigned confidential source file number.

(70)    Disclosure of confidential source file numbers at various times and in various documents could ultimately identify these sources because it would reveal the connections of confidential informants to the information they provided.  Repeated release of confidential source

file numbers along with the information provided by CHSs would narrow the possibilities of the informants' true identities.  This is especially true because each confidential source file number is assigned to only one CHS.  The revelation of an individual CHS's identity would expose the CHS and their family to potential retaliation by those on whom they provided information, those sympathetic to the targets of the FBI's investigative efforts, or those suspicious/hostile to law enforcement.  Such retaliation could include defamation of the source's character among their peers/family; economic reprisal (deprivation of employment/business opportunities); violent threats aimed at instilling fear and doubt; or even violence itself (physical harm/murder).  Globally, revealing an informant's identity could dissuade current or future CHSs from cooperating with the FBI, and from providing the FBI critical, timely intelligence needed to prevent/investigate violations of federal laws.  Being able to provide credible assurances of complete confidentiality, and in course uphold such assurances, enables the FBI to enlist and maintain the cooperation of such CHSs.  Accordingly, the disclosure of confidential source file numbers could reasonably be expected to identify FBI CHSs, and could harm the FBI's ability to recruit and maintain valuable CHSs.  Thus, the FBI properly withheld this information pursuant to Exemption 7(D).

### (b)(7)(D)-3: Foreign Government Agency Information Under Express Confidentiality

(71)    Pursuant to Exemption (b)(7)(D)-3, the FBI protected the identity of and the information provided by foreign law enforcement authorities to the FBI under an "express" assurance of confidentiality.  It is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence that a foreign government agency can be persuaded to continue providing valuable assistance in the future.  To identify these sources, or the information shared, could subject them to unofficial inquiries not anticipated by

their contact with the FBI.  The FBI's ability to obtain information quickly and discreetly in future law enforcement investigations would be negatively affected.

(72)    The FBI has many agreements with foreign governments under which security and/or criminal law enforcement information is exchanged.  The agreements specify the extent of confidentiality requested by the respective foreign authorities.  While one foreign law enforcement agency might request confidentiality for its identity and not necessarily the information provided, another agency might request confidentiality for both its identity and the information provided, and yet another agency may request that its information be protected while it does not object to the disclosure of its relationship with the FBI.  Accordingly, the FBI asserted Exemption (b)(7)(D) to withhold the identity of foreign law enforcement agencies, their personnel, and their information because these law enforcement agencies requested their identity, information, and/or relationship be protected under an express assurance of confidentiality.

### (b)(7)(D)-4: Foreign Government Agency Information Under Implied Confidentiality

(73)    Pursuant to Exemption (b)(7)(D)-4, the FBI protected the identity of and the information provided by foreign law enforcement authorities to the FBI under an implied assurance of confidentiality.  Certainly, the FBI does not infer that all foreign government agencies who cooperate in US federal investigations do so with expectations of confidentiality.  However, under some circumstances, such an expectation may be inferred.  Here, foreign government agencies provided specific detailed information of value to the FBI that is singular in nature, concerning Russian Organized Crime, specifically relating to Ivankov.  The FBI inferred these personnel provided this information to the FBI with an expectation their involvement in the investigation, and/or the information they provided, would remain confidential.  This is supported because releasing this information would risk revealing these agencies' broader investigative focuses of

33

interconnected organized crime investigations which could reveal the scope of those authorities' gathered evidence/intelligence on Russian Organized Crime, connections they have discovered between different criminal elements, and the strategies they plan to pursue to prevent or disrupt further criminal activities/national security threats. This would allow the criminal elements to predict the FBI's partner agencies' investigative strategies, and modify their activities or operational security measures to thwart further investigative efforts. These foreign agencies also risk damaging their efforts to recruit and retain confidential sources, as the information provided in the responsive records concerns the law enforcement agencies' own confidential sources. The partnering agencies or nations also risk potential retribution against their personnel or citizenry based on their cooperation with the FBI as part of its efforts to investigate Russian Organized Crime. Based on the violent nature of organized crime, there is a greater risk of reprisal by the remaining members of the criminal organization, even if the particular subject of this investigation, Vyacheslav Ivankov, is now deceased.

(74)    The FBI relies heavily on assistance from foreign partners in pursuing its law enforcement and intelligence gathering missions. The disclosure of this information could have disastrous consequences. If this information were released to the public under FOIA, these foreign government agencies would be less likely to freely share sensitive information with the FBI. It could also harm the FBI's ability to seek support and or assistance from these agencies during joint investigations. Additionally, the FBI's disclosure of such information could provide a window into the scope and focus of these foreign agencies' investigations into Russian Organized Crime, discredit these foreign agencies with current and future confidential sources, and greatly hinder their ability to recruit their own valuable sources, and could also subject the agencies' personnel to violent reprisal. Accordingly, it is reasonable for the FBI to infer these foreign government

agencies provided this information to the FBI under circumstances in which an assurance of confidentiality can be implied.  Thus, this information is exempt from disclosure pursuant to FOIA Exemption 7(D).

### (b)(7)(D)-5: Confidential Source Symbol Numbers

(75)    Pursuant to Exemption (b)(7)(D)-5, the FBI protected the permanent source symbol numbers given to FBI confidential human sources ("CHSs").  The FBI assigns permanent source symbol numbers to CHSs who report information to the FBI on a regular basis under express assurances of confidentiality.  In this case, the FBI did not refer to the confidential sources by their true names.  Instead, these sources were referred to only by their individually assigned permanent source symbol numbers, in order to further protect their identities within FBI communications. The FBI obtained information from these confidential sources relevant to the investigation discussed within the records at issue.

(76)    If the FBI disclosed the confidential source symbol numbers of these informants, their identities could be ascertained by persons knowledgeable of the FBI's investigations and the events and subjects involved.  This is because these singular numbers are assigned to specific individuals.  Repeated release of their numbers, within the context of certain events/in association with certain singular information, could enable criminals and those familiar with these matters to pinpoint who could possibly have been present at certain events or could possibly have known different pieces of information.  Furthermore, once sources' identities were discerned, the informants, as well as their families, could be subjected to embarrassment, humiliation, and/or physical or mental harm.  Moreover, the disclosure of a CHS's identity would likely portray the FBI as unwilling to protect its CHSs from exposure and/or negligent in honoring its promises to keep CHSs' identities confidential.  This could dissuade current and future potential CHSs with

access to critical intelligence from cooperating with FBI investigators.  The FBI has found that it is only with the understanding of complete confidentiality that the aid of such informants can be enlisted, and only through this confidence that informants can be persuaded to continue providing valuable assistance in the future.  Accordingly, as release of source symbol numbers could endanger current/past FBI CHSs and their families, and could harm the FBI's ability to recruit and maintain CHSs, the FBI properly withheld this information pursuant to FOIA Exemption 7(D).

### (b)(7)(D)-6: Name, Identifying Information of, and Information Provided by an Individual under an Implied Assurance of Confidentiality

(77)    Pursuant to Exemption (b)(7)(D)-6, the FBI protected the name, identifying information of, and information provided by a third party under circumstances in which confidentiality can be inferred.  This third party provided information concerning the activities of subjects who were of investigative interest to the FBI.  Considering 1) the singularity of the information provided and the likelihood this individual could be identified through release of this information by those familiar with the events described; 2) the proximity of this source to the investigative subjects and events they described; 3) and the nature of the criminal acts they described, the FBI inferred this individual provided this information to the FBI only because they believed their cooperation with, and the information they provided, would remain confidential.

(78)    The FBI protected the identifying information of and information provided by an individual who conveyed critical information regarding criminal acts.  This individual was in a position to have ready access to and/or knowledge about investigative targets and others involved in criminal activities coordinated by Russian Organized Crime under the leadership of Ivankov. Such access exposed them to potentially significant harms should their association and cooperation with the FBI be publicly disclosed.  One reason they risked harm when cooperating is they were within the orbit of suspected violent criminals, and such criminals (in the FBI's experience)

typically seek to deter informants' cooperation with law enforcement through reprisal. Such reprisal can take many forms, to include defamation of the source's character among their peers/family; economic reprisal (deprivation of employment/business opportunities); violent threats aimed at instilling fear and doubt; or even violence itself (physical harm/murder). Considering these criminals already displayed and were believed by the source to have a propensity towards violence, the source likely feared violent reprisal. Furthermore, harm could result simply from the fact they cooperated with law enforcement. Some individuals or communities are suspicious of law enforcement and see cooperation with law enforcement among their peers as a betrayal of trust. Thus, the source also risked being alienated by their friends and within their community when they decided to provide information to the FBI. Even amidst these potential harms, this third-party source provided specific, detailed information that is singular in nature – *i.e.,* only a few individuals would be privy to such information. Thus, the FBI determined disclosure of the identity of this source *and* the information they provided could subject this third party, as well as their family, to retaliation or backlash, should their information be disclosed.

(79)    Considering the circumstances described above, it is reasonable to infer this third party cooperated with the FBI only because they expected their identity and the information they provided would be held in confidence. Therefore, the FBI properly protected the source's identity and the information they provided pursuant to Exemption 7(D).

### EXEMPTION (b)(7)(E)
### INVESTIGATIVE TECHNIQUES AND PROCEDURES

(80)    5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(81)     Exemption (b)(7)(E) has been asserted to protect information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(82)     Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public.  Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.

### (b)(7)(E)-1: Internal FBI Secure Telephone and Fax Numbers

(83)     Pursuant to Exemption (b)(7)(E)-1, the FBI protected secure telephone and fax numbers.  The FBI properly withheld secure telephone and fax numbers used by the FBI during the performance of the FBI's law enforcement mission.  Release of these telephone and fax numbers could subject the FBI to massive, disruptive, and misleading amounts of communications as well as harassment and threats.  It could also enable circumvention of the law by allowing criminals to gain access to internal communication channels used by the FBI to communicate internally.  As such, release of these telephone and fax numbers would clearly disrupt official business by impeding the ability of the FBI to conduct and conclude law enforcement investigations in a timely matter.  Accordingly, the FBI asserted Exemption 7(E) to withhold this information.

### (b)(7)(E)-2: Identities and/or Locations of FBI Units and Squads

(84)     Pursuant to Exemption (b)(7)(E)-2, the FBI protected methods and techniques involving the identities and locations of FBI units and squads involved in the investigation of

Russian Organized Crime and Ivankov. Such office locations and specific units or squads are usually found in the administrative headings of internal FBI documents. These headings identify the locations of the office and the units or squads that originated or received the documents. Disclosure of the locations of these units or squads conducting the investigation would reveal the targets, the physical areas of interest of the investigation, and when taken together with the other locations, if identified, could establish a pattern or "mosaic" that identification of a single location would not. If the locations are clustered in a particular area, it would allow criminals to avoid those locations, especially if one or more locations appeared with frequency or in a pattern. This would disrupt the method of the investigative process and deprive the FBI of valuable information. The withholding of the specific units or squads involved is justifiable as well under a similar rationale. Once identified, the units' and squads' areas of expertise would become known and the target(s) of the investigation would be able to discern the investigative strategies deployed by the FBI. For example, knowing that a unit whose focus is on financial crimes is involved in an investigation is quite different information than knowing that the unit involved has a focus on crimes of violence. This knowledge could allow a subject to employ countermeasures targeted toward concealing particular types of behavior and/or allow them to make informed decisions to avoid altogether certain activities in a particular location. Furthermore, certain FBI units/squads are highly specialized, and are involved in deploying particular investigative techniques and procedures. Revealing their involvement in an investigation would reveal non-public details concerning which techniques and procedures were deployed in certain investigative circumstances, and subsequently allow for criminals to predict the FBI's use of these techniques and procedures in similar investigative circumstances. This would allow for them to discover and circumvent the deployment of these techniques and procedures, greatly reducing their effectiveness.

(85)     In summary, the FBI withheld the involvement of particular units and squads to prevent criminals from adjusting their behavior and activities to circumvent FBI law enforcement efforts.  Accordingly, the FBI properly asserted Exemption 7(E) to withhold this information.

### (b)(7)(E)-3:  Information Regarding Targets, Dates, and Scope of Surveillance

(86)     Pursuant to Exemption (b)(7)(E)-3, the FBI protected information concerning the targets, locations, monitoring, and types of devices utilized in surveillance operations conducted by the FBI in relation to the investigation at issue here.  The FBI utilized these surveillance operations to obtain investigative intelligence relevant to the investigation of Ivankov and associates in Russian Organized Crime.  The law enforcement techniques used to conduct these surveillance operations are the same techniques utilized by the FBI in current criminal and national security investigations.  Certainly, it is publicly known the FBI and other law enforcement agencies engage in different types of surveillance in investigations.  However, disclosure of non-public details about who, when, how, and under what circumstances the FBI conducts surveillance would allow current and future subjects of FBI investigations and other potential criminals to develop and utilize countermeasures to defeat or avoid different types of surveillance operations, thus rendering the techniques useless to the FBI and other law enforcement agencies.  This is especially true because the success of investigative surveillance hinges on investigators' abilities to remain undetected.  Revealing any non-public details about the FBI's methodology for conducting surveillance could potentially jeopardize the FBI's ability to operate surveillance covertly, and risks circumvention of the law.  Accordingly, the FBI properly asserted Exemption 7(E) to withhold this information.

### (b)(7)(E)-4: Sensitive Investigative File Numbers

(87)    Pursuant to Exemption (b)(7)(E)-4, the FBI protected sensitive investigative file numbers.  The FBI determined this Exemption is appropriate for protecting these file numbers as the release of file numbering convention identifies the investigative interest or priority given to such matters.  The file numbers the FBI protected are not known to the general public.  These file numbers contain three separate portions.  The first portions of these file numbers consist of FBI file classification numbers which indicate the types of investigative/intelligence gathering programs to which these files pertain.  Many of the FBI's classification numbers are public, which makes disclosure of this information even more telling.  Release of known file classification numbers in the context of investigative records would immediately reveal the types of investigations being pursued, and thus the types of investigative techniques and procedures available to FBI investigators, and/or non-public facets of the FBI's investigative strategies.  For example revealing the FBI has a money laundering investigative file on a subject who was only known to be investigated for crimes related to public corruption, would reveal key non-public information about the FBI's investigative strategies and gathered evidence.  Additionally, releasing non-public FBI file classification numbers would reveal critical information about non-public investigative techniques and procedures, and provide criminals and foreign adversaries the ability to discern the types of highly sensitive investigative strategies the FBI is pursuing whenever such file classification numbers are present within these and other sensitive FBI investigative records.

(88)    The protected investigative file numbers also contain two letter office of origin codes, indicating which FBI field office or overseas FBI legal attaché originated the investigations at issue.  Providing this information, in many instances, would provide critical information about where and how the FBI detected particular criminal behaviors or national security threats, and

reveal key pieces about the FBI's non-public investigations or intelligence/evidence gathering sources and methods.  Revealing this information could also risk disclosing unknown FBI investigations or intelligence gathering initiatives, by revealing interests in varying areas of FBI investigative responsibility.  Releasing this information could also possibly provide significant information about the FBI's failure to detect certain types of criminal behavior.  For example, a criminal operating out of San Francisco, California with ties to a criminal organization under investigation in the FBI's Seattle Field Office, could request the FBI's Seattle Field Office's investigative file.  If the FBI were to reveal all of the originating office codes in the investigative files present in Seattle's file, and there was no indication the FBI ever pursued an investigation in San Francisco, the criminal could reasonably assume the FBI failed to locate any evidence of their wrongdoing, emboldening them to continue their activities, undeterred.

(89)   The third portion of these investigative files consists of the numbers given to the unique investigative initiatives these files were created to memorialize.  Releasing these singular file numbers would provide criminals and foreign adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts. Continued release of sensitive investigative file numbers would provide criminal with an idea of how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative strategies.  This would provide criminals with a means of judging where the FBI allocates its limited investigative resources, how the FBI responds to different investigative circumstances, what the FBI knows and when/how they obtained the knowledge, and if there are knowledge gaps in the FBI's gathered intelligence.

(90)   In summary, repeatedly releasing sensitive FBI investigative file numbers would allow determined criminals and foreign adversaries to obtain an exceptional understanding of the

body of investigative intelligence available to the FBI; and where, who, what and how it is investigating certain detected activities. Release of this information would enable these criminals and foreign adversaries to predict FBI investigations and structure their behavior to avoid detection and disruption by FBI investigators, enabling them to circumvent the law. Accordingly, the FBI properly asserted FOIA Exemption 7(E) to protect this type of information.

### 7(E)-5: Highly Sensitive Law Enforcement Techniques and Procedures

(91)    Pursuant to Exemption (b)(7)(E)-5, the FBI protected information pertaining to sensitive law enforcement techniques and procedures the FBI uses for criminal investigations. Revealing the specific details of how these techniques and procedures are employed, in what situations they are most effective, the types of targets against which these techniques are employed, and the nature of the information/evidence gleaned via the use of these techniques and procedures, would be extremely detrimental to the FBI's ability to effectively utilize these techniques and procedures. Release of this information would allow criminals and those who threaten the national security of the United States the ability to develop countermeasures to circumvent the FBI's use of these techniques and procedures, greatly reducing their effectiveness. The use of these techniques and procedures within the investigative records at issue is not known, and further description of these techniques and procedures in this context could result in circumvention of these techniques and procedures by investigative subjects. As further disclosure would undoubtedly compromise crucial law enforcement techniques and procedures, and severely hamper the FBI's law enforcement efforts to detect and apprehend individuals who seek to violate the United States' criminal and national security laws, the FBI withheld this information pursuant to Exemption 7(E). To provide the Court with further justification for the withholding of this

information, Defendant, on behalf of the FBI, has requested permission to provide additional

information for *ex parte in camera* review.

### (b)(7)(E)-6: Monetary Payments for Investigative Techniques

(92)     Pursuant to Exemption (b)(7)(E)-6, the FBI protected monetary amounts requested

by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques.

The FBI has limited resources that it must allocate strategically in order to effectively pursue its

law enforcement and intelligence gathering missions.  Revealing the amount of money the FBI has

paid or plans to pay to implement certain investigative techniques would reveal the FBI's level of

focus on certain types of law enforcement or intelligence gathering efforts.  Revealing this level

of focus would reveal how the FBI plans to allocate its limited resources and essentially paint a

picture as to where the FBI's strengths and weaknesses lie within the spectrum of illegal activities

it is mandated to investigate.  This harm, in relation to the records at issue, has not diminished with

time as the resources allocated at the time of the original investigation are relative to the FBI's

current strategic resource allocation for current organized crime investigations.  Releasing this

information would give criminals the opportunity to structure their activities in a manner which

avoids the FBI's strengths and exploits its weaknesses.  Because release of this type of information

would enable criminals to circumvent the law, this information has been redacted pursuant to

Exemption 7(E).

### (b)(7)(E)-7: Database Information and Search Results

(93)     Pursuant to Exemption (b)(7)(E)-7, the FBI protected the identities of sensitive

investigative databases and database search results located through queries of these non-public

databases used for official law enforcement purposes by the FBI.  Releasing the identities of these

databases and any information located through queries of these databases would give criminals

insight into the available tools and resources the FBI uses to conduct criminal and national security investigations (*i.e.*, the scope of information stored within the databases, how the FBI uses the databases to support its investigations, the types of information most valued by the FBI for particular investigations, and vulnerabilities of the databases).

(94)     Revealing the use of these databases in the context of FBI investigative records, and the information generated through queries of these databases, would reveal the nature of their utility to FBI investigators and the scope of information stored within the databases.  Disclosing when and why the FBI queries these databases would reveal key information about FBI investigative strategies.  This is because different investigative databases contain varying datasets, and revealing the types of data sought by investigators in particular investigative circumstances would reveal the FBI strategies employed in response to different investigative circumstances. Additionally, disclosing the search results for particular subjects would provide criminals with an understanding of the scope of FBI collected intelligence on particular subjects.  It would expose possible intelligence gaps and/or intelligence gathering strengths.  This would allow criminals to make informed decisions on how they might structure their behavior to exploit these strengths and weaknesses, and avoid detection and/or disruption by the FBI.

(95)     Revealing the types of information stored in these databases would also reveal the types of information most useful to FBI investigators.  This would provide criminals with an understanding of how they might structure their behavior and/or deploy countermeasures to deprive the FBI of useful intelligence/evidence, thus jeopardizing the FBI's investigative mission.

(96)     Finally, revealing the identities of these databases could jeopardize the FBI's investigative mission by revealing exactly where the FBI is storing and obtaining valuable investigative data.  Knowing the database names makes the original source data an attractive target

for compromise.  It would allow criminals who gain access to FBI systems an idea of where they can go to discover what the FBI knows, how it gathered the information, and possible information regarding the FBI's investigative strategies.  It would also offer these criminals the opportunity to corrupt or destroy information stored within these databases.

(97)    In summary, release of this information relative to FBI investigation databases impede the FBI's effectiveness and potentially aid in circumvention of valuable investigative techniques.  Therefore, the FBI withheld this information pursuant to Exemption 7(E).

## CONSULTATIONS WITH OTHER GOVERNMENT AGENCIES

(98)    The FBI consulted with the United States Marshals Service ("USMS") concerning Bates pages: 329-330, 408-409, 413-414, 419, and 427-428.  USMS requested information be protected pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  The FBI protected this information on behalf of USMS because FOIA Exemption (b)(6) allows an agency to withhold personnel, medical, and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical," or "similar files" under Exemption 6.  FOIA Exemption (b)(7)(C) protects records or information compiled for law enforcement purposes to the extent that the production of such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  A discretionary release of such records is not appropriate.  *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989).  Accordingly, the personally identifiable information of law enforcement officers and/or government employees (such as, names) was withheld from the responsive documentation.  The disclosure of such sensitive information contained in records compiled for law enforcement purposes to the public could subject law enforcement officers and other

government personnel to harassment and unwelcome contact.  This could disrupt and impede official agency activity, as well as endanger the safety of law enforcement officials.

(99)     The FBI consulted with the United States Citizenship and Immigration Services ("USCIS") concerning Bates pages: 301-304[16], 312-313, and 316-317.  USCIS requested that information be protected pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  The FBI protected this information on behalf of USCIS to protect the name and identifying information of a third party of investigative interest pursuant to Exemption (b)(6) similar to the FBI's justification for Exemption categories (b)(6)-2 and (b)(7)(C)-2 described in ¶ 54 *supra*, and the identification number of a USCIS inspector pursuant to Exemption (b)(7)(C), similar to the FBI's justification for Exemption categories (b)(6)-2 and (b)(7)(C)-4 described in ¶ 56 *supra*.

### SEGREGABILITY

(100)   As discussed in ¶ 4 *supra*, the FBI identified through negotiations with Plaintiff a total of 524 responsive pages and processed those pages as follows:  63 Released in Full ("RIF"), 313 Released in Part ("RIP"), and 148 Withheld in Full ("WIF").  Each of these categories is discussed below to further address segregability.

     a.   Pages RIF.  Following its segregability review, RIDS determined 63 pages could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption.

     b.   Pages RIP.  Following its segregability review, RIDS determined 313 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and

---

[16] On Bates page 304, the FBI inadvertently failed to label the withholding with exemption (b)(6) in addition to the labeled (b)(7)(C).  USCIS had asked the FBI to withhold the information for both exemptions. The attached Index has the correct exemptions listed. *See* **Exhibit Q.**

material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

c.   Pages WIF.   Following its segregability review, RIDS determined 148 pages required withholding in their entirety.  Of the 148 pages WIF, RIDS determined all information on 119 pages was either fully covered by one or more of the cited FOIA exemptions, or determined that any non-exempt information on these pages was so intertwined with exempt material that no information could be reasonably segregated for release.  Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. Also, the FBI withheld 29 pages because they were duplicates of pages accounted for elsewhere in the FBI's production.  It is the FBI's standard practice not to process duplicate pages, as doing so expends finite processing resources with a net result of no additional information being released to requesters.[17]

## CONCLUSION

(101)  The FBI performed adequate and reasonable searches for responsive records; processed all such records and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA request that are subject to FOIA.  Information was properly withheld pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E).  The FBI carefully examined the documents and determined the information withheld from Plaintiff in this case, if

---

[17] The FBI mistakenly withheld Bates Page 189 in full as a duplicate in its initial review.  After further examination, the FBI determined the document was not an exact copy and has reviewed that page for applicable exemptions and attached it as **Exhibit R** for provision to Plaintiff.

disclosed, would reveal statutorily protected information; would cause a clearly unwarranted invasion of personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and/or would disclose techniques and procedures for law enforcement investigations.   After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through R attached hereto are true and correct copies.

Executed this ___1st___ day of July, 2020.

MICHAEL G. SEIDEL
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SETH HETTENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT A

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2017-09-16T23:09:56.714289+00:00 Status: pending Message:

## Individual Information

| | |
|---|---|
| Prefix | |
| First Name | Seth |
| Middle Name | |
| Last Name | Hettena |
| Suffix | |
| Email | shettena@gmail.com |
| Phone | 619-630-8270 |
| Location | United States |

## Domestic Address

| | |
|---|---|
| Address Line 1 | 4616 El Cerrito Drive |
| Address Line 2 | |
| City | San Diego |
| State | California |
| Postal | 92115 |

## Agreement to Pay

**How you will pay**

I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below.

**Allow up to $** 100

## Proof Of Affiliation for Fee Waiver

**Waiver Explanation**

I am a journalist and published author (Feasting on the Spoils, St. Martin' Press). I plan to disseminate the information obtained in this request via book I am researching and writing on President Trump and Russia. From 1992-1995, Ivankov moved back and forth between Trump Tower and Trump's New Jersey casinos. A copy of Ivankovâ€™s personal phone book included a workin number for the Trump Organizationâ€™s Trump Tower Residence, and a Trump Organization office fax machine, according to author Robert I Friedman. The president's involvement with a Russian mobster is of critical importance to the people of the United States and I plan to disseminate this

**Documentation Files**

## Deceased Individual

**Prefix**

**First Name** VYACHESLAV

**Middle Name** Kirillovich

**Last Name** Ivankov

**Suffix**

**ARN**

**SSN**

**FBI Number**

**Date of Birth** 1940/01/02

**Place of Birth**

Georgia, Soviet Union

**Date of Death** 2009/10/09

**Additional Information**

Vyacheslav Ivankov arrived in the United States in 1992. In 1995, Vyachesla
Ivankov was arrested by the FBI on charges of extorting $ 3.5 million from
American businessmen Alexander Volkov and Voloshin Vladimir, who owned
Summit International. A warrant to tap his phones had been obtained by the
FBI. Ivankov was said to be a close associate of noted Russian Mobster
Semion Mogivleich. After his release from prison he returned to Russia wher
he was assassinated in 2009.

I am interested in obtaining details of Ivankov's background, his connectio
with the Mogilevich organization, details of his activities in the United
States from 1992-1995, and any and all associations between Ivankov and
Donald Trump or members of the Trump Organization.

In addition to the above I am interested in obtaining the following
document: The Invakov aka "Yaponchik" Organization produced by the
Organizational Intelligence Unit in 1994.

**Supporting documentation** For a Departed Mobster Wreaths and Roses but No Tears - The New York

# Expedite

**Expedite Reason**

I am a journalist and published author (Feasting on the Spoils, St. Martin'
Press). I plan to disseminate the information obtained in this request via
book I am researching and writing on President Trump and Russia. From
1992-1995, Ivankov moved back and forth between Trump Tower and Trump's New
Jersey casinos. A copy of Ivankov's personal phone book included a workin
number for the Trump Organization's Trump Tower Residence, and a Trump
Organization office fax machine, according to author Robert I Friedman. The
president's involvement with a Russian mobster is of critical importance to
the people of the United States and I plan to disseminate this

----END MESSAGE----

*The New York Times*

**EUROPE**

# For a Departed Mobster, Wreaths and Roses but No Tears

By **MICHAEL SCHWIRTZ**   OCT. 13, 2009

MOSCOW — With an array of pinstripes, leather coats and facial scars, princes of the Russian underworld gathered on Tuesday to say farewell to a king.

**Vyacheslav K. Ivankov**, a Russian crime boss who survived tangles with the K.G.B., the F.B.I. and other violent criminals in a bloody career that spanned decades, was laid to rest at a Moscow cemetery. Hundreds attended the funeral.

Mr. Ivankov died on Friday in a Moscow hospital from complications stemming from a gunshot wound he received apparently in an assassination attempt in July. He was 69.

His death has set off fears of a mob war in Moscow like those that bloodied the streets of major Russian cities in the 1990s.

"It almost certainly will lead to some deaths," said Vadim Volkov, a Russian mafia expert at the European University at St. Petersburg. "It shows that violence is still the ultimate way of resolving a dispute."

Russian officials, however, have played down the threat.

"There will be no conflict," Vladimir A. Vasilyev, chairman of the Security Committee in the Russian Parliament, told the Ria Novosti news agency. "Even if there is one, then it will occur so deeply within these structures that it will in no way threaten citizens."

Better known as Yaponchik, or the Little Japanese, Mr. Ivankov was among the last of a mafia-like criminal class known as the **Vory v Zakone**, or Thieves-in-Law. Though the Vory figure prominently in Russia's rich criminal mythology, their influence in the criminal world has waned since their heyday in the Soviet period, organized crime experts say.

Among these heavily tattooed crime barons, Mr. Ivankov was royalty. By most accounts he began his career as a petty thief in the 1960s, serving multiple terms in Soviet prisons before fleeing to the United States in the early 1990s. There, he built a criminal empire based in New York that the F.B.I. once considered among the most powerful in the country.

In 1997 he was **sentenced** to nine years in prison for extortion, but was extradited to **Russia** in 2004 to face murder charges. He was acquitted and freed.

Mr. Ivankov was able to keep a low profile until July, when a gunman shot him in the stomach with a sniper rifle as he left a Thai restaurant in central Moscow, Russian prosecutors said. No suspects have been identified.

The funeral brought out a sampling of characters, including thick-necked toughs wearing heavy gold chains and cigar-smoking men in pinstriped suits. Many were carrying huge bouquets of red roses.

"Forgive us, we could not protect you," read a banner signed "Osman and brothers" on one of the many wreaths from various "brotherhoods" piled outside the chapel of the Vagankovskoe Cemetery, where Mr. Ivankov was buried.

Several ambulances and busloads of riot police officers crowded the cemetery entrance, though mourners appeared to come and go freely.

A version of this article appears in print on October 14, 2009, on Page A6 of the New York edition with the headline: For a Departed Mobster, Wreaths and Roses but No Tears.

© 2017 The New York Times Company

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SETH HETTENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT B



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 22, 2017

MR. SETH HETTENA
4616 EL CERRITO DRIVE
SAN DIEGO, CA 92115

FOIPA Request No.: 1385162-000
Subject: IVANKOV, VYACHESLAV
KIRILLOVICH

Dear Mr. Hettena:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI.

☑     Your request has been received at FBI Headquarters for processing.

☐     Your request has been received at the _____ Resident Agency / _____ Field Office and forwarded to FBI Headquarters for processing.

☑     You submitted your request via the FBI's eFOIPA system.

       ☑     We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIA request will be provided in an email link.

       ☐     We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIPA request will be sent through standard mail.

☐     The subject of your request is currently being processed for public release.   Documents will be released to you upon completion.

☐     Release of responsive records will be made to the FBI's FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑     Your request for a fee waiver is being considered and you will be advised of the decision at a later date.   If your fee waiver is denied, you will be charged fees in accordance with the category designated below.

☑     For the purpose of assessing fees, we have made the following determination:

       ☐     As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

       ☐     As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

       ☑     As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.   Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:   https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
            v.                                   )          Civil Action No. 19-1058 (ABJ)
                                                 )
U.S. DEPARTMENT OF JUSTICE,                      )
                                                 )
                    Defendant.                   )
                                                 )

# EXHIBIT C



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 22, 2017

MR. SETH HETTENA
4616 EL CERRITO DRIVE
SAN DIEGO, CA 92115

FOIPA Request No.: 1385162-000
Subject: IVANKOV, VYACHESLAV KIRILLOVICH

Dear Mr. Hettena:

This is in reference to your letter to the FBI, in which you requested expedited processing for the above-referenced Freedom of Information Act (FOIA) request.   Under Department of Justice (DOJ) standards for expedited processing, it can only be granted in the following situations:

**28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

**28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

**28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process of rights."

**28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."

You have not provided enough information concerning the statutory requirements permitting expedition; therefore, your request is denied.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.   Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief
Record/Information
Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-1058 (ABJ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# EXHIBIT D



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

September 29, 2017

MR. SETH HETTENA
4616 EL CERRITO DRIVE
SAN DIEGO, CA 92115

FOIPA Request No.: 1385162-000
Subject: IVANKOV, VYACHESLAV
KIRILLOVICH

Dear Mr. Hettena:

Records responsive to your request were previously processed under the provisions of the Freedom of Information Act.  Enclosed is one CD containing 875 pages of previously processed documents and a copy of the Explanation of Exemptions.  This release is being provided to you at no charge.

Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your information needs for the requested subject, you may request the additional records for processing.

<table>
<tr><td colspan="2" align="center">**Requester Response**</td></tr>
<tr><td>☐</td><td>Yes, process and provide me the additional records responsive to my subject.</td></tr>
<tr><td>☐</td><td>No, close my request.</td></tr>
<tr><td colspan="2">**Please submit your response within thirty (30) days by mail or fax to—Work Processing Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997.  Please cite the FOIPA Request Number in your correspondence.**</td></tr>
</table>

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.  Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."  Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

Enclosure(s)

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                              )
                                           )
              Plaintiff,                    )
                                           )
       v.                                  )        Civil Action No. 19-1058 (ABJ)
                                           )
U.S. DEPARTMENT OF JUSTICE,                 )
                                           )
              Defendant.                    )
                                           )

# EXHIBIT E

**FOIPAQUESTIONS**

| | |
|---|---|
| **From:** | Seth Hettena <shettena@gmail.com> |
| **Sent:** | Friday, October 06, 2017 3:18 PM |
| **To:** | FOIPAQUESTIONS |
| **Subject:** | FOIPA Request No: 1385162-000 |

Per our conversation today, I am requesting the additional records responsive to my request. The subject of the request is Vyacheslav Ivankov. Please don't hesitate to ask if you have any more questions.

Sincerely,

Seth Hettena
619-630-8270

**OCT 13** 2017

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                        )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        Civil Action No. 19-1058 (ABJ)
                                     )
U.S. DEPARTMENT OF JUSTICE,          )
                                     )
            Defendant.               )
                                     )

# EXHIBIT F

**From:** Seth Hettena [mailto:shettena@gmail.com]
**Sent:** Wednesday, October 25, 2017 10:54 AM
**To:** FOIPAQUESTIONS <FOIPAQUESTIONS@FBI.GOV>
**Subject:** Re: Dispute Resolution Services

Yes please! Thanks so much. Seth
On Wed, Oct 25, 2017 at 7:35 AM, FOIPAQUESTIONS <FOIPAQUESTIONS@fbi.gov>
wrote:

Dear Mr. Hettena,

I think this would be something that could be handled as a dispute.  If you'd like, I can go
ahead and initiate this process for you.

Respectfully,


**Public Information Officer**
Record/Information Dissemination Section (RIDS) FBI-Records Management Division
170 Marcel Drive, Winchester, VA 22602-4843
Direct: (540) 868-4593
Fax: (540) 868-4391/4997
Questions E-mail: foipaquestions@fbi.gov

Do you have further questions about the FOI/PA process? Visit us at
http://www.fbi.gov/foia

Please check the status of your request online at https://vault.fbi.gov/fdps-1/@@search-fdps   Status updates are performed on a weekly basis.

**From:** Seth Hettena [mailto:shettena@gmail.com]
**Sent:** Wednesday, October 25, 2017 10:25 AM
**To:** FOIPAQUESTIONS <FOIPAQUESTIONS@FBI.GOV>
**Subject:** Re: Dispute Resolution Services

I'm not sure what the best course of action is. Can you advise me how best to resolve this?

Seth

On Wed, Oct 25, 2017 at 6:43 AM FOIPAQUESTIONS <FOIPAQUESTIONS@fbi.gov> wrote:

> Dear Mr. Hettena,
>
> Are you wishing to file an appeal or submit a request through the dispute resolution services?
>
> Respectfully,
>
>
> **Public Information Officer**
> Record/Information Dissemination Section (RIDS) FBI-Records Management Division
> 170 Marcel Drive, Winchester, VA 22602-4843
> Direct: (540) 868-4593
> Fax: (540) 868-4391/4997
> Questions E-mail: foipaquestions@fbi.gov
>
> Do you have further questions about the FOI/PA process? Visit us at
> http://www.fbi.gov/foia
>
> Please check the status of your request online at https://vault.fbi.gov/fdps-1/@@search-fdps   Status updates are performed on a weekly basis.
>
> **From:** Seth Hettena [mailto:shettena@gmail.com]
> **Sent:** Wednesday, October 25, 2017 12:54 AM
> **To:** FOIPAQUESTIONS <FOIPAQUESTIONS@FBI.GOV>
> **Subject:** Dispute Resolution Services
>
> Re: FOIPA Request 1387577-000 SAPIR, TAMIR
>
> I am writing to appeal the fee determination in the above request. I was categorized as a general (all others) requester. Please categorize me as a news media requester.  I am a member of the news media. I am a former correspondent for The Associated Press, an author and freelance writer. My work has been published in The New York, American

Lawyer and other publications. In addition, I am the author of Feasting on the Spoils published in 2006 by St. Martin's Press. I am currently writing a book about Donald Trump and the Russian Mafia. I would be happy to provide samples of my work if you wish.

Sincerely,

Seth Hettena

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                              )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )          Civil Action No. 19-1058 (ABJ)
                                           )
U.S. DEPARTMENT OF JUSTICE,                )
                                           )
            Defendant.                     )
                                           )

# EXHIBIT G



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

October 26, 2017

MR. SETH HETTENA
4616 EL CERRITO DRIVE
SAN DIEGO, CA 92115

FOIPA Request No.: 1385162-000
Subject: IVANKOV, VYACHESLAV
KIRILLOVICH

Dear Mr. Hettena:

This is in response to your request for a public interest fee waiver for the above referenced Freedom of Information Act (FOIA) request.   Public interest fee waivers are determined on a case by case basis.   See 5 U.S.C. § 552 (a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(i)-(ii).   Your request for a public interest fee waiver was reviewed, and it was not granted.   Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes.   Please read each one carefully.

☑        **You failed to articulate any of the statutory requirements.**

☐        **Quoting or paraphrasing the statute, without providing factual detail or support specific to your request, does not provide sufficient basis to render an informed decision.**

☐        **You failed to demonstrate the requirement that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government. See 28 C.F.R. § 16.10(k)(i).**

☐        **Disclosure of the information is primarily in the commercial interest of the requester. See 28 C.F.R. § 16.10(k)(ii).**

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us."   The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 19-1058 (ABJ)

# EXHIBIT H



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**
_Washington, D.C. 20535_

October 26, 2017

MR. SETH HETTENA
4616 EL CERRITO DRIVE
SAN DIEGO, CA 92115

FOIPA Request No.: 1385162-000
Subject: IVANKOV, VYACHESLAV
KIRILLOVICH

Dear Mr. Hettena:

This is in reference to your Freedom of Information Act (FOIA) request.

By letter dated September 16, 2017, you indicated your willingness to pay $100.00 in FOIA processing fees.   The Federal Bureau of Investigation (FBI) has located approximately 37,934 pages of records potentially responsive to the subject of your request.   By DOJ regulation, the FBI notifies requesters when anticipated fees exceed $25.00.   Below you will find check boxes and informational paragraphs about your request.   Please read each one carefully.

☐     If all potentially responsive pages are released on CD, you will owe $____ in duplication fees (___ CDs at $15.00 each, less $5.00 credit for the first CD).   Releases are made on CD unless otherwise requested.   Each CD contains approximately 500 reviewed pages per release.   The 500 page estimate is based on our business practice of processing complex cases in segments.

Should you request that the release be made in paper, you will owe $____ based on a duplication fee of five cents per page. See 28 CFR §16.10 and 16.49.

☑     You submitted your request via the FBI's eFOIPA system.   Releases will be made to you electronically, and you will owe $1,140.00 in duplication fees (76 releases at $15.00 each).

☐     The FBI's eFOIPA system cannot transmit digital media files, and they will need to be released on CD.   The FBI located audio and video files that are potentially responsive to the subject of your request.   If all of the potentially-responsive media is released, you will owe $_____ (__ CDs at $15.00 each, less $5.00 credit for the first CD).

☐     CDs will not be sent to a correctional institution.   You will only qualify for CD releases if an alternate address is provided.

☐     You will owe approximately $___ in international shipping fees.

**The estimated total cost for processing your request is approximately $1,140.00 for eFOIA releases.**

Please remember this is only an estimate, and some of the information may be withheld in full pursuant to FOIA/Privacy Act exemption(s).  Also, some information may not be responsive to your subject. Thus, the actual charges could be less.

**Requester Response**

No payment is required at this time. You must notify us in writing within thirty (30) days from the date of this letter of your format decision (paper or CD) unless your request qualifies for eFOIPA releases.   You must also indicate your preference in the handling of your request in reference to the estimated duplication fees from the following four (4) options:

☐   I am willing to pay estimated duplication/ international shipping fees up to the amount specified in this letter.

☐   I am willing to pay fees of a different amount.

**Please specify amount:** _____

☐   Provide me 100 pages or the cost equivalent ($5.00) free of charge.   If applicable, I am willing to pay International shipping fees.

☐   Cancel my request.

Include the **FOIPA Request Number** listed above in any communication regarding this matter.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the Freedom of Information Act (FOIA).   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue.   This may also reduce search and duplication costs and allow for a more timely receipt of your information.   The FBI uses a multi-queue processing system to fairly assign and process new requests.   Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request and your willingness to pay the estimated search and duplication costs indicated above.   Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time.   Mail your response to: **Work Process Unit; Record Information/Dissemination Section; Records Management Division; Federal Bureau of Investigation; 170 Marcel Drive; Winchester, VA 22602.** You may also fax your response to: 540-868-4997, Attention: Work Process Unit.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
SETH HETTENA,                                )
                                             )
                    Plaintiff,               )
                                             )
            v.                               )        Civil Action No. 19-1058 (ABJ)
                                             )
U.S. DEPARTMENT OF JUSTICE,                  )
                                             )
                    Defendant.               )
—————————————————————     )

# EXHIBIT I

**FOIPAQUESTIONS**

| | |
|---|---|
| **From:** | Seth Hettena <shettena@gmail.com> |
| **Sent:** | Wednesday, November 15, 2017 11:45 PM |
| **To:** | FOIPAQUESTIONS |
| **Subject:** | Re: FOIPA request 1385162-000 |

Hi there. Can you tell me what the status of this request is for FOIPA request 1385162-000 on Vyacheslav Ivankov? Last I heard you were reviewing my request to be considered a media requester. Has this been decided? If so, can I go ahead and get some of the documents?

Seth Hettena

On Thu, Oct 26, 2017 at 10:08 PM Seth Hettena <shettena@gmail.com> wrote:
Hi there. Another question for you. I'm wondering if I also considered a general requester in another FOIPA request 1385162-000 Vyacheslav Ivankov?

Today I received notice that there would be a fee of more than $1,100 for documents.

This is pretty expensive, but the information could be very useful to my research.

Would changing my status to media requester reduce the cost of this request?


Seth Hettena

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-1058 (ABJ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# EXHIBIT J

**FBI.FOIPA.NEGOTIATION**

| | |
|---|---|
| **From:** | FBI.FOIPA.NEGOTIATION |
| **Sent:** | Monday, December 04, 2017 12:14 PM |
| **To:** | 'shettena@gmail.com' |
| **Subject:** | FOIA Request #1385162-000 |

| | |
|---|---|
| **Categories:** | Leslie |

Good morning Mr. Hettena,

I understand you have reached out to our Public Information Officer to reduce the size of your request on Ivankov Vyacheslav, FOIA #1385162-000.  We are in receipt of multiple requests on this subject; therefore, the records associated with the subject will be processed and placed on the vault as they become available.

I do apologize for the delay in following up to your inquiry for negotiating.  We do thank you for your continued patience.  If you have any further questions, please don't hesitate to respond to this email or by phone.

Sincerely,

Negotiation Team
FOIA Support Unit
Records Management Division
Federal Bureau of Investigation
540-868-4894

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          Civil Action No. 19-1058 (ABJ)
                                       )
U.S. DEPARTMENT OF JUSTICE,            )
                                       )
            Defendant.                 )
                                       )

# EXHIBIT K



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

January 25, 2018

Mr. Seth Hettena
4616 El Cerrito Drive
San Diego, CA   92115

FOIPA Request No.: 1385162
Subject: Ivankov, Vyacheslav Kirillovich

Dear Mr. Hettena:

Reference is made to your Freedom of Information Act (FOIA) request for FBI records concerning Vyacheslav Kirillovich Ivankov.   This letter will serve to document your telephone conversation with my representative on January 24, 2018.

My representative explained that your request is currently in the large track of our multi-track backlog of unassigned FOIA requests.   This track contains requests for records in excess of 950 pages and assignments from this queue to our FOIA Processing Units are typically delayed for a significant amount of time.   My representative indicated that the FBI located approximately 37,934 pages potentially related to your subject and you were offered the opportunity to reduce the scope of your request to accelerate its assignment for processing.   Based on that conversation, you agreed to the processing of the next two file sections of a New York field office file.

Through negotiation, your request was reduced from a large-track request of 37,934 pages to a medium-track request of 528 pages, which will speed the processing time.   We certainly appreciate your consideration in this matter and solicit your continued patience.

If you have any further questions, please do not hesitate to contact my representative at 540-868-4894.   You may also submit questions via the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

Sincerely,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SETH HETTENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT L

**FOIPAQUESTIONS**

| | |
|---|---|
| **From:** | Seth Hettena <shettena@gmail.com> |
| **Sent:** | Friday, March 15, 2019 10:47 AM |
| **To:** | FOIPAQUESTIONS |
| **Subject:** | Re: FOIPA Request No: 1385162-001 |

Thank you for your response. I believe it was a dispute resolution request.

Sincerely,
Seth Hettena

On Fri, Mar 15, 2019 at 6:20 AM FOIPAQUESTIONS <FOIPAQUESTIONS@fbi.gov> wrote:

Dear Mr. Hettena,


Thank you for contacting foipaquestions@fbi.gov.  Are you referencing an appeal to OIP or a Dispute Resolution Request through the FBI?


Respectfully,


**Public Information Officer**

Record/Information Dissemination Section (RIDS) FBI-Information Management Division

170 Marcel Drive, Winchester, VA 22602-4843

Direct: (540) 868-4593

Fax: (540) 868-4391

Questions E-mail: foipaquestions@fbi.gov


Do you have further questions about the FOI/PA process? Visit us at http://www.fbi.gov/foia


Please check the status of your request online at https://vault.fbi.gov/fdps-1/@@search-fdps    Status updates are performed on a weekly basis.

**Note:  This is a non-emergency email address.  If this is an emergency, please call 911 directly.  If you need to report a tip for immediate action, please contact FBI Tips at http://tips.fbi.gov/ or reach out to your local field office.**

**From:** Seth Hettena [mailto:shettena@gmail.com]
**Sent:** Thursday, March 14, 2019 4:01 PM
**To:** FOIPAQUESTIONS <FOIPAQUESTIONS@FBI.GOV>
**Subject:** FOIPA Request No: 1385162-001

Sir/Madam:

I am writing you on March 14, 2019 for help compiling a complete administrative record for my FBI FOIA request on Vyacheslav Ivankov, Control No 1385162-001.

I am unable to locate a copy of your response to my appeal of my fee determination, which was mailed to me sometime in the fall of 2017. Would you be able to provide me with a copy of the letter?  Please do not hesitate if you have any questions or concerns.

Sincerely,

Seth Hettena

619-630-8270

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          Civil Action No. 19-1058 (ABJ)
                                       )
U.S. DEPARTMENT OF JUSTICE,            )
                                       )
            Defendant.                 )
                                       )

# EXHIBIT M



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

March 20, 2019

MR. SETH HETTENA
4616 EL CERRITO DRIVE
SAN DIEGO, CA 92115

FOIPA Request No.: 1385162-000
Subject: IVANKOV, VYACHESLAV KIRILLOVICH

Dear Mr. Hettena:

Thank you for utilizing the Federal Bureau of Investigation's (FBI) Freedom of Information / Privacy Acts (FOIPA) dispute resolution services. We appreciate your patience regarding this matter.

Regarding your inquiry dated October 25, 2017, we conducted a review of your request.     For the purpose of assessing any fees, on November 11, 2017 we determined:

☐  As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☑  As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☐  As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

You may view the status of your request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.

Should you disagree with our determination, you may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov for dispute resolution services from the FBI.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services," and you should also cite the FOIPA Request Number assigned to your request.  Your use of dispute resolution services does not toll the time limit to file a timely appeal with the Director, OIP, U.S. Department of Justice.

Sincerely,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

Enclosure

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)     (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)     related solely to the internal personnel rules and practices of an agency;

(b)(3)     specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)     trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)     inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)     personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)     records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)     contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)     geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)     information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)     material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)     information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)     investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)     material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)     required by statute to be maintained and used solely as statistical records;

(k)(5)     investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)     material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                              )
                                           )
                   Plaintiff,              )
                                           )
            v.                             )          Civil Action No. 19-1058 (ABJ)
                                           )
U.S. DEPARTMENT OF JUSTICE,                )
                                           )
                   Defendant.              )
                                           )

# EXHIBIT N



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 31, 2019

Mr. Seth Hettena
4616 El Cerrito drive
San Diego, CA 92115

Civil Action Number: 19-cv-1058
*Hettena v. DOJ*
FOIPA Request No.: 1385162-0
Subject: Ivankov, Vyacheslav Kirillovich

Dear Mr. Hettena:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure.  The appropriate exemptions are noted on the processed pages next to redacted information.  In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions.  An Explanation of Exemptions is enclosed to further explain justification for withheld information.

|  | **Section 552** |  | **Section 552a** |
|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| Rule 6(e), Federal Rules of Criminal Procedure | ☑ (b)(7)(D) | ☐ (k)(2) |
| 18 U.S.C. § 2518 | ☑ (b)(7)(E) | ☐ (k)(3) |
|  | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) |  | ☐ (k)(7) |

270 pages were reviewed and 208 pages are being released.

Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☑ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☑ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.  **"Part 1"** of the Addendum includes standard responses that apply to all requests.  **"Part 2"** includes additional standard responses that apply to all requests for records on individuals.   **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Information Management Division

Enclosures:

In response to your Freedom of Information Act (FOIA) request, enclosed documents represent the first interim release of information responsive to your request containing Bates Pages 19-cv-1058(FBI)-1 through 19-cv-1058(FBI)-270.

All material in this case in being provided to you at no charge.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum includes information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes additional standard responses that apply to all requests for records on individuals.   Part 3 includes general information about FBI records.   For questions regarding Parts 1, 2, or 3, visit the **www.fbi.gov/foia** website under "Contact Us."   Previously mentioned appeal and dispute resolution services are also available at the web address.


**Part 1: The standard responses below apply to all requests:**

(i)   **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIA [5 U.S.C. § 552(c) (2006 & Supp. IV (2010)].   FBI responses are limited to those records subject to the requirements of the FOIA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)   **National Security/Intelligence Records**.   The FBI can neither confirm nor deny the existence of national security and foreign intelligence records pursuant to FOIA exemptions (b)(1), (b)(3), and PA exemption (j)(2) as applicable to requests for records about individuals [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2); 50 U.S.C § 3024(i)(1)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that national security or foreign intelligence records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)   **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)   **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)   **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching those systems or locations where responsive records would reasonably be found.   A reasonable search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide and includes Electronic Surveillance (ELSUR) records.   For additional information about our record searches visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)   **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)   **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheets.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv)   **The National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SETH HETTENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT O



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

August 30, 2019

Mr. Seth Hettena
4616 El Cerrito Drive
San Diego, CA 92115

           Civil Action Number: 1-19-cv-1058
           *Hettena v. DOJ*
           FOIPA Request No.: 1385162
           Subject: Ivankov, Vyacheslav Kirillovich

Dear Mr. Hettena:

      The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure.   The appropriate exemptions are noted on the processed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions.   An Explanation of Exemptions is enclosed to further explain justification for withheld information.

|  | **Section 552** |  | **Section 552a** |
|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| Rule 6(e), Federal Rules of | ☑ (b)(7)(D) | ☐ (k)(2) |
| Criminal Procedure | | |
| 18 U.S.C. § 2518 | ☑ (b)(7)(E) | ☐ (k)(3) |
| 50 U.S.C. § 3024(i)(1) | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

      254 pages were reviewed and 143 pages are being released.

      Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

      ☑ Document(s) were located which originated with, or contained information concerning, other
         Government Agency (ies) [OGA].

        ☐ This information has been referred to the OGA(s) for review and direct response to you.
        ☑ We are consulting with another agency.   The FBI will correspond with you regarding this information
          when the consultation is completed.

      Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records on individuals.   **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following website:   https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Information Management Division

Enclosures:

In response to your Freedom of Information Act (FOIA) request, enclosed documents represent the second interim release of information responsive to your request containing Bates Pages 19-cv-1058(FBI)-271 through 19-cv-1058(FBI)-524.

All material in this case in being provided to you at no charge.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum includes information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes additional standard responses that apply to all requests for records on individuals.   Part 3 includes general information about FBI records.   For questions regarding Parts 1, 2, or 3, visit the **www.fbi.gov/foia** website under "Contact Us."   Previously mentioned appeal and dispute resolution services are also available at the web address.


**Part 1: The standard responses below apply to all requests:**

(i)     **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIA [5 U.S.C. § 552(c) (2006 & Supp. IV (2010)].   FBI responses are limited to those records subject to the requirements of the FOIA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)    **National Security/Intelligence Records**.   The FBI can neither confirm nor deny the existence of national security and foreign intelligence records pursuant to FOIA exemptions (b)(1), (b)(3), and PA exemption (j)(2) as applicable to requests for records about individuals [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2); 50 U.S.C § 3024(i)(1)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that national security or foreign intelligence records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)     **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)    **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)     **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching those systems or locations where responsive records would reasonably be found.   A reasonable search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide and includes Electronic Surveillance (ELSUR) records.   For additional information about our record searches visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)    **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)   **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheets.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **The National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 19-1058 (ABJ)

# EXHIBIT P



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

September 30, 2019

Mr. Seth Hettena
4616 El Cerrito Drive
San Diego, CA 92115

Civil Action Number: 1-19-cv-1058
*Hettena v. DOJ*
FOIPA Request No.: 1385162
Subject: Ivankov, Vyacheslav Kirillovich

Dear Mr. Hettena:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure. The appropriate exemptions are noted on the processed pages next to redacted information. In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions. An Explanation of Exemptions is enclosed to further explain justification for withheld information.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

27 pages were reviewed and 24 pages are being released.

Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐  Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐  This information has been referred to the OGA(s) for review and direct response to you.
☐  We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records on individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following website:  https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosures:

In response to your Freedom of Information Act (FOIA) request, enclosed documents represent the final release of information responsive to your request.

You were previously advised that we were consulting with other agencies concerning information located as a result of your FOIA request. These consultations are complete and the enclosed materials are being released to you with the appropriate exemptions noted next to the redacted information.   Deletions have been made by the U.S. Citizenship and Immigration Services (USCIS) and United States Marshals Service (USMS). These materials contain Bates Pages:

    19-cv-1058(FBI)-19 -19-cv-1058(FBI)-22
    19-cv-1058(FBI)-301 - 19-cv-1058(FBI)-304
    19-cv-1058(FBI)-311 - 19-cv-1058(FBI)-318
    19-cv-1058(FBI)-328 - 19-cv-1058(FBI)-330
    19-cv-1058(FBI)-408 - 19-cv-1058(FBI)-409
    19-cv-1058(FBI)-413 - 19-cv-1058(FBI)-414
    19-cv-1058(FBI)-419 - 19-cv-1058(FBI)-420
    19-cv-1058(FBI)-426 - 19-cv-1058(FBI)-427

As we previously advised, all material in this case is being provided to you at no charge.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum includes information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes additional standard responses that apply to all requests for records on individuals.   Part 3 includes general information about FBI records.   For questions regarding Parts 1, 2, or 3, visit the www.fbi.gov/foia website under "Contact Us."   Previously mentioned appeal and dispute resolution services are also available at the web address.


**Part 1: The standard responses below apply to all requests:**

(i)      **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIA [5 U.S.C. § 552(c) (2006 & Supp. IV (2010)].   FBI responses are limited to those records subject to the requirements of the FOIA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)     **National Security/Intelligence Records.**   The FBI can neither confirm nor deny the existence of national security and foreign intelligence records pursuant to FOIA exemptions (b)(1), (b)(3), and PA exemption (j)(2) as applicable to requests for records about individuals [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2); 50 U.S.C § 3024(i)(1)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that national security or foreign intelligence records do or do not exist.


**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)      **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)     **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.


**Part 3: General Information:**

(i)      **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching those systems or locations where responsive records would reasonably be found.   A reasonable search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide and includes Electronic Surveillance (ELSUR) records.   For additional information about our record searches visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)     **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)    **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheets.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **The National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

SETH HETTENA,                              )
                                           )
                    Plaintiff,             )
                                           )
            v.                             )          Civil Action No. 19-1058 (ABJ)
                                           )
U.S. DEPARTMENT OF JUSTICE,                )
                                           )
                    Defendant.             )
———————————————————————————————————————————)

# EXHIBIT Q

*Hettena v. DOJ*
19-cv-1058
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## **Exemption Application Index**

| SUMMARY OF FOIA EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **EXEMPTION (b)(3)** | **INFORMATION PROTECTED BY STATUE** |
| (b)(3)-1 | 18 U.S.C §§ 2510-20 (Title III of the Omnibus Crime Control and Safe Streets Act) |
| (b)(3)-2 | Federal Grand Jury Information - Federal Rule of Criminal Procedure 6(e) |
| (b)(3)-3 | National Security Act of 1947 - 50 U.S.C. § 3024(i)(1) |
| **EXEMPTION (b)(6) and EXEMPTION (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information of FBI Special Agents and Profesional Staff |
| (b)(6)-2 and (b)(7)(C)-2 | Names and Identifying Information of Third Parties of Investigative Interest |
| (b)(6)-3 and (b)(7)(C)-3 | Names and Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 and (b)(7)(C)-4 | Names and Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-5 and (b)(7)(C)-5 | Names of Local Law Enforcement Personnel |
| (b)(6)-6 and (b)(7)(C)-6 | Names and Identifying Information of 3rd Parties who Provided Information *[cited at times in conjunction with 7(D)]* |
| (b)(6)-7 and (b)(7)(C)-7 | Name and Identifying Information Regarding a Third Party Victim |
| (b)(6)-8 and (b)(7)(C)-8 | Names of Foreign Government Agents/Personnel |
| **EXEMPTION (b)(7)(D)** | **CONFIDENTIAL SOURCE INFORMATION** |
| (b)(7)(D)-1 | Names, Identifying Data and/or Information Provided by Individuals Under an Express Assurance of Confidentiality (including Symbol Source Informants) |
| (b)(7)(D)-2 | Confidential Source File Numbers |
| (b)(7)(D)-3 | Foreign Government Agency Information Under Express Confidentiality |
| (b)(7)(D)-4 | Foreign Government Agency Information Under Implied Confidentiality |
| (b)(7)(D)-5 | Confidential Source Symbol Numbers |
| (b)(7)(D)-6 | Name, Identifying Data and/or Information Provided by an Individual Under an Implied Assurance of Confidentiality |
| **EXEMPTION (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | Internal FBI Secure Telephone and Fax Numbers |
| (b)(7)(E)-2 | Identity and/or Location of FBI or Joint Units, Squads, Divisions |
| (b)(7)(E)-3 | Information Regarding Targets, Dates, and Scope of Surveillance |

| (b)(7)(E)-4 | Sensitive Investigative File Numbers |
| (b)(7)(E)-5 | Highly Sensitive Law Enforcement Techniques and Procedures |
| (b)(7)(E)-6 | Monetary Payments for Investigative Techniques |
| (b)(7)(E)-7 | Database Information and Search Results |

**INDEX KEY**

RIF: Released in Full

RIP: Released in Part

WIF: Withheld in Full

FOIA WIF: Withheld in full pursuant to FOIA Exemptions

Dup: Duplicate page that was withheld in full

Dup of: Location of original copy

Per USMS: Information was withheld by United States Marshals Service

Per USCIS: Information was withheld by United States Citzenship amd Immigration Service

| Bates | b3 1 | b3 2 | b3 3 | 6/7C 1 | 6/7C 2 | 6/7C 3 | 6/7C 4 | 6/7C 5 | 6/7C 6 | 6/7C 7 | 6/7C 8 | 7D 1 | 7D 2 | 7D 3 | 7D 4 | 7D 5 | 7D 6 | 7E 1 | 7E 2 | 7E 3 | 7E 4 | 7E 5 | 7E 6 | 7E 7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 2 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 3 | X | | | | | | | | | | | | | | | | | | | | | X | | | | | | | X | | | |
| 4 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 5 |
| 5 | X | | | | | | | | | | | | | | | | | | | | | X | | | | | | | X | | | |
| 6 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 7 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 8 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 9 | | | | X | | | | | | | | | | | | | | | | | | X | X | | | | | | X | | | |
| 10 | | | | | | X | X | | X | | | | | | | | | | | | | | | | | | | | X | | | |
| 11 | | | | X | | | | | X | | | | | | | | | | | | | X | | | | | | | X | | | |
| 12 | | | | | | X | X | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 13 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 14 | | | | X | X | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 15 | | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | |
| 16 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 17 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 18 | | | | X | X | | | | X | | | X | X | | | | | | | | | | | | | | | | X | | | |
| 19 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 20 | | | | X | X | | | | | X | | | | X | | | | | | | | | | | | | | | | X | |
| 21 | | | | X | X | | | | | X | | | | X | | | | | | | | | | | | | | | | X | |
| 22 | | | | | X | | | | | X | | | | X | | | | | | | | | | | | | | | | X | |
| 23 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 24 | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 26 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 27 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 28 | | | | X | X | | X | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 29 | | | | X | X | | X | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 30 | | | | X | | | X | | | | | | | X | | X | | | | | | | | | | | | X | | | | |
| 31 | | | | X | X | | X | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 32 | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 33 | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 34 | | | | | X | X | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 35 | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 36 | | | | | X | | X | | X | | | | | | | | | | | | | | | | | | | X | | | | |
| 37 | | | | X | | | | | | | | | | | | | | | | X | | | | | | | | X | | | | |
| 38 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 39 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 40 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 41 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 40 |
| 42 | | X | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 43 | | X | | | | X | | X | | | | | | | | | | | | | | | | | | | | X | | | | |
| 44 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 45 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 46 | | | | X | X | | | | | | | X | | X | | | | | | | | | | | | | | X | | | | |
| 47 | X | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 48 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 49 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 50 | X | | | X | | | | X | | | | | | | | | | | | | | | | | | | | X | | | | |
| 51 | | | | X | X | | | | | | | | | | | | | X | | | | | | | | | | X | | | | |
| 52 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 53 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 54 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 55 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 56 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 57 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 58 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 59 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 60 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 61 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 62 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 63 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 64 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 65 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 66 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 67 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 68 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 69 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 70 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 71 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 72 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 73 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 74 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 75 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 76 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 77 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 78 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 79 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 80 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |

| Bates | b3-1 | b3-2 | b3-3 | 6/7C-1 | 6/7C-2 | 6/7C-3 | 6/7C-4 | 6/7C-5 | 6/7C-6 | 6/7C-7 | 6/7C-8 | 7D-1 | 7D-2 | 7D-3 | 7D-4 | 7D-5 | 7D-6 | 7E-1 | 7E-2 | 7E-3 | 7E-4 | 7E-5 | 7E-6 | 7E-7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 81 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 82 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 83 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 84 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 85 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 86 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 87 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 88 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 89 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 90 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 91 |  |  |  | X |  |  |  |  |  |  |  |  | X |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 92 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 93 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 94 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 95 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 96 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 97 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 98 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 99 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 100 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 101 | X |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |  |  |  |  |  |  |  |  | X |  |  |  |
| 102 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |  |  |  |  |  |  |  |  | X |  |  |  |
| 103 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 104 |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 105 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 106 |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 107 |  |  |  | X |  |  | X |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 108 |  |  |  | X |  |  | X |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 109 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 110 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 111 |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 112 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 113 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 114 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  | X |  |  |  |
| 115 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 116 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 117 |  |  |  |  | X | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 118 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 119 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
| 120 |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 121 |  |  |  | X |  | X |  |  |  | X |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 122 |  |  |  | X | X |  |  |  |  | X |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 123 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 124 |  |  |  | X | X | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 125 |  |  |  | X | X | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 126 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 127 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 128 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 129 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 130 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 131 |  |  |  | X |  | X |  |  |  | X |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 132 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 133 |  |  |  | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 134 |  |  |  |  | X |  |  | X |  |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 135 |  |  |  |  | X |  |  | X |  |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 136 |  |  |  |  | X |  |  | X |  |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 137 |  |  |  |  | X |  |  | X |  |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 138 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X |  |  |  |  |  |  | X |  |  |  |  |
| 139 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 140 | X |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 141 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 142 |  |  |  | X |  |  |  |  | X |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 143 | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 144 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 145 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |
| 146 |  |  |  | X | X |  |  | X |  |  |  |  |  |  |  |  |  |  |  | X | X |  |  |  |  |  |  |  | X |  |  |  |  |
| 147 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 148 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 149 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 150 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 151 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |
| 152 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 153 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 154 |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 155 |  |  |  |  | X |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 156 |  |  |  | X |  | X |  |  |  | X |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 157 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 158 |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 159 |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |
| 160 |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |

| Bates | b3-1 | b3-2 | b3-3 | 6/7C-1 | 6/7C-2 | 6/7C-3 | 6/7C-4 | 6/7C-5 | 6/7C-6 | 6/7C-7 | 6/7C-8 | 7D-1 | 7D-2 | 7D-3 | 7D-4 | 7D-5 | 7D-6 | 7E-1 | 7E-2 | 7E-3 | 7E-4 | 7E-5 | 7E-6 | 7E-7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 161 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 162 | | | | X | X | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 163 | | | | X | X | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 164 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 165 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 166 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 167 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 165 |
| 168 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 169 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 165 |
| 170 | | | | X | X | | | | X | | | | | | X | | | | | | | | | | | | | | X | | | |
| 171 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 172 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 173 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 174 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 175 | | | | X | | | | | | | | | | | | | | X | | | | | | | | | | | X | | | |
| 176 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 177 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 178 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | X | | | |
| 179 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | X | | | |
| 180 | | | | X | | | | | X | | | | | | | | | | | | | | | | | | | | X | | | |
| 181 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 179 |
| 182 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 183 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 184 | | | | X | X | | | | X | | | X | | | X | | | | | | | | | | | | | | X | | | |
| 185 | | | | | X | | | | X | | | X | | | X | | | | | | | | | | | | | | X | | | |
| 186 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 187 | | | | | X | X | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 188 | | | | | X | X | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 189 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 190 | | | | X | X | X | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 191 | | | | | X | X | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 192 | | | | | | | | | | | | X | | X | | | | | | | | | | | | | | | X | | | |
| 193 | | | | X | X | | | | | | | | X | | | | | | X | | | | | | | | | | X | | | |
| 194 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 195 | | | | | X | X | | | | | | | | | | | | | X | | | | | | | | | | X | | | |
| 196 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 195 |
| 197 | | | | X | | | | | X | | | | | | X | | | | | | | | | | | | | | X | | | |
| 198 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 199 | | | | X | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 200 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 201 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 202 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 203 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 204 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 205 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 206 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 207 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 208 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 209 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 210 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 211 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 212 | X | | | X | | X | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 213 | X | | | X | | X | X | | | | | | | | | | | | | | | | | | | | | | X | | |
| 214 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 215 | X | | | X | | X | X | | | | | | | | | | | | | | | | | | | | | | X | | |
| 216 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 217 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 218 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 219 | X | | | X | X | X | X | | X | | | | | | | | | | | | | | | | | | | | X | | |
| 220 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 221 | | | | | X | | | | | | | X | | | | | | X | | | | | | | | | X | | X | | | |
| 222 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 223 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 224 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 225 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 226 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |
| 227 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 228 | | | | X | X | | X | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 229 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 230 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 231 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 232 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 233 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 234 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 235 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 236 | | | | X | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 237 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 238 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 239 | | | | X | X | | | | | | | X | | | | | | X | | | | | | | | | | | X | | | |
| 240 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | X | | | |

| Bates | b3 1 | b3 2 | b3 3 | 6/7C 1 | 6/7C 2 | 6/7C 3 | 6/7C 4 | 6/7C 5 | 6/7C 6 | 6/7C 7 | 6/7C 8 | 7D 1 | 7D 2 | 7D 3 | 7D 4 | 7D 5 | 7D 6 | 7E 1 | 7E 2 | 7E 3 | 7E 4 | 7E 5 | 7E 6 | 7E 7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 241 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 242 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 243 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 244 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 245 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 246 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 247 | | | | | X | | | | | | | X | | X | | | | | | | | | | | | | | | | X | | | |
| 248 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 249 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 250 | | | | X | X | | | | X | | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 251 | | | | X | X | X | | | X | | | | | X | | | | | | | | | | | | | | | | X | | | |
| 252 | | | | X | X | X | | | X | | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 253 | | | | | X | | | | X | | | | | X | X | | | | | | | | | | | | | | | X | | | |
| 254 | | | | | X | | | | X | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 255 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 256 | | | | | | | | | | | | | | X | X | | | | | | | | | | | | | | | X | | | |
| 257 | | | | X | | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 258 | | | | | X | | | | | | | X | | | | | | | X | | | | | | | | | | | X | | | |
| 259 | | | | | X | | | | X | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 260 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 261 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | | |
| 262 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 263 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 264 | | | | | X | X | | | | | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 265 | | | | X | | | | | | | | | | | | | | | | | X | | | | | | | | | X | | | |
| 266 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 267 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 265 |
| 268 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 266 |
| 269 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 265 |
| 270 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 266 |
| 271 | | | | | X | | | | | | | | | | X | | | | | | X | | | | | | | | | X | | | |
| 272 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 273 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 274 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 271 |
| 275 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 272 |
| 276 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 273 |
| 277 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 278 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 279 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | | |
| 280 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 281 | | | | X | X | | | | | | | X | | | X | | | | | X | | | | | | | | | | X | | | |
| 282 | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | | | X | | | |
| 283 | | | | | X | | | | | | | X | | | | | | | | X | | | | | | | | | | X | | | |
| 284 | | | | | X | | | X | | X | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 285 | | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 286 | | | | X | X | | | | | | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 287 | | X | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 288 | | X | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 289 | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | | X | | | |
| 290 | | | | X | X | | | X | | X | | | | | X | | | | | | | | | | | | | | | X | | | |
| 291 | X | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 292 | | | | X | | | | | | | | | | | | | | | | | | X | | | | | | | | X | | | |
| 293 | | | | | | | | | | | | | | | | | | | | | X | X | | | | | | | | X | | | |
| 294 | | | | X | X | | | | | | | | | | | | | | | | | | X | | | | | | | X | | | |
| 295 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | | |
| 296 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 297 | | | | X | X | | | | | | | | | | | | | X | | | X | | | | | | | | | X | | |
| 298 | | | | X | X | | | | | | | | | | | | | | | | X | | | | | | | | X | | | |
| 299 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 300 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 301 | | | | X | X | | | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 302 | | | | | | | | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 303 | | | | | | | | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 304 | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | | |
| 305 | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 306 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 305 |
| 307 | | | | X | | | X | | X | | | | | X | | | | | | | | | | | | | | | X | | | |
| 308 | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 309 | | | | X | X | X | X | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 310 | | X | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 311 | | | | X | | | | | | | | | | | | | | | | | X | | | | | | | | X | | | |
| 312 | | | | | X | | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 313 | | | | | X | | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 314 | | | | | X | X | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 315 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 316 | | | | | X | | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 317 | | | | | X | X | | | | | | | | | | | | | | | | | | | b6 | | | X | | | |
| 318 | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 319 | | | | X | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 320 | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |

| Bates | b3 1 | b3 2 | b3 3 | 6/7C 1 | 6/7C 2 | 6/7C 3 | 6/7C 4 | 6/7C 5 | 6/7C 6 | 6/7C 7 | 6/7C 8 | 7D 1 | 7D 2 | 7D 3 | 7D 4 | 7D 5 | 7D 6 | 7E 1 | 7E 2 | 7E 3 | 7E 4 | 7E 5 | 7E 6 | 7E 7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 321 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 322 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 323 | | | | X | | | | | | | | | | | | | | | | | X | | | | | | | | | X | | | |
| 324 | | | | X | | X | X | | | X | | | | | | X | | | | | | | | | | | | | | X | | | |
| 325 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 326 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 327 | | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 328 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 329 | | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | X | | | |
| 330 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | X | | | |
| 331 | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | | |
| 332 | X | | | X | X | | | | | | X | | | | | | | | | | | | | | | | | | | X | | | |
| 333 | X | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 334 | | | | X | | | X | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 335 | X | X | | X | | | | | X | | X | | | | | X | | | | | | | | | | | | | | X | | | |
| 336 | | | | | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 337 | | | | | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 338 | | | | | | | X | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 339 | X | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 340 | X | | | X | | | X | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 341 | X | | | X | | | | | X | X | | | | | | | | | | | | | | | | | | | | X | | | |
| 342 | X | | | | X | | | | X | X | | | | | | | | | | | | | | | | | | | | | | X | |
| 343 | X | | | | | | | | X | X | | | | | | | | | | | | | | | | | | | | | | X | |
| 344 | X | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 345 | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 346 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 347 | | | | X | X | | | | X | | | | | | | | | | | | X | | | | | | | | | X | | | |
| 348 | | | | X | X | | | | X | | | | | | | | | | | | X | | | | | | | | | | X | |
| 349 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 350 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | | X | |
| 351 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 352 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | | X | |
| 353 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 354 | | | | X | | | | | X | | | | | | | | | | | | | | | | | | | | | | X | |
| 355 | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 356 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 357 | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 358 | X | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 359 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 358 |
| 360 | X | | | X | | X | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 361 | X | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | | |
| 362 | | | | X | X | | | | | | | | | | | X | | | | | | X | | | | | | | | X | | | |
| 363 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 364 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 365 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 362 |
| 366 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 363 |
| 367 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 364 |
| 368 | | | | X | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 369 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 370 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 371 | | | | X | X | | | | X | | | | | | | | | X | | | | | | | | | | | | X | | | |
| 372 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 373 | | | | X | X | | | | X | | X | | | | | X | | | | | | | | | | | | | | | X | |
| 374 | | | | X | | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 375 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 334 |
| 376 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 335 |
| 377 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 336 |
| 378 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 337 |
| 379 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 338 |
| 380 | | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 381 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 382 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 383 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 384 | | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 385 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 386 | | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 387 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | | |
| 388 | | | | X | | | | | X | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 389 | | | | | | | | | | X | | | | | | X | | | | | | | | | | | | | | | | X | |
| 390 | | | | X | | | | | X | X | | | | | | X | | | | | | | | | | | | | | | | X | |
| 391 | | X | | X | X | | | | | | | | | | | X | | | | | | X | | | | | | | | X | | | |
| 392 | | X | | | X | | | | | | | | | | | X | | | | | | X | | | | | | | | X | | | |
| 393 | | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 394 | | | | X | X | | X | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 395 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 396 | | | | X | X | X | | X | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 397 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 398 | | | | X | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 399 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 400 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |

| Bates | b3-1 | b3-2 | b3-3 | 6/7C-1 | 6/7C-2 | 6/7C-3 | 6/7C-4 | 6/7C-5 | 6/7C-6 | 6/7C-7 | 6/7C-8 | 7D-1 | 7D-2 | 7D-3 | 7D-4 | 7D-5 | 7D-6 | 7E-1 | 7E-2 | 7E-3 | 7E-4 | 7E-5 | 7E-6 | 7E-7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 401 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 402 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 329 |
| 403 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 330 |
| 404 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 405 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 406 | | | | X | X | | X | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 407 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 408 | | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 409 | | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 410 | | | | X | X | | X | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 411 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 412 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 413 | | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 414 | | | | X | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 415 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 416 | | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 417 | | | | X | | X | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 418 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 419 | | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 420 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 421 | | | | X | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 422 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 423 | | | | X | X | X | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 424 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 425 | | | | X | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 426 | | | | | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 427 | | | | X | | | | | | | | | | | | | | | | | | | | | | | b6, b7C | | | X | | |
| 428 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 429 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 430 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 431 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 432 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 433 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 434 | | | | X | X | X | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 435 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 436 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 437 | | | | X | X | | | | X | | | | | | | | | | | | | | | | | | | | | X | | |
| 438 | | | | X | | | | | | | | | | | | | | X | | | | | | | | | | | | X | | |
| 439 | | | | X | | | | X | | | | | | | X | | | | | | | | | | | | | | | | X | | |
| 440 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 441 | | | | X | | | | | X | | | | | | X | | | | | | | | | | | | | | | X | | |
| 442 | | | | | X | | | X | X | | | | | | X | | | | | | | | | | | | | | | X | | |
| 443 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 444 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 445 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| 446 | | | | X | | | | | | | | | | | X | | | X | | | | | | | | | | | | X | | |
| 447 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 448 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 449 | | | | | X | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 450 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 451 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 452 | | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 453 | | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 454 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 455 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 456 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 457 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 455 |
| 458 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 455 |
| 459 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 460 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 461 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 462 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 463 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 464 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 465 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 466 | | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 467 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 468 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 469 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 470 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 471 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 472 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 473 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 474 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 475 | | | | | | X | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 476 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 477 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 478 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 479 | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 480 | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |

| Bates | b3 1 | b3 2 | b3 3 | 6/7C 1 | 6/7C 2 | 6/7C 3 | 6/7C 4 | 6/7C 5 | 6/7C 6 | 6/7C 7 | 6/7C 8 | 7D 1 | 7D 2 | 7D 3 | 7D 4 | 7D 5 | 7D 6 | 7E 1 | 7E 2 | 7E 3 | 7E 4 | 7E 5 | 7E 6 | 7E 7 | Seal Info | Per USCIS | Per USMS | RIF | RIP | FOIA WIF | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 481 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 482 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 483 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 484 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 485 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 486 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 487 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 488 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 489 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 490 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 491 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | | X | |
| 492 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 493 | | | | X | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 494 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 495 | | | | X | X | | | | | | | X | | | | X | | | | | | | | | | | | | | | X | | |
| 496 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 497 | | | | X | X | | | | | | | X | | | | X | | | | | | | | | | | | | | X | | | |
| 498 | | | | | X | | | | | | | X | | | | X | | | | | | | | | | | | | | X | | | |
| 499 | | | | | | | | | | | | X | | | | X | | | | | | | | | | | | | | X | | | |
| 500 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 501 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 502 | | | | X | | | | | | | | | | | | | | | X | | | | | | | | | | | X | | | |
| 503 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 509 |
| 504 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | X | 508 |
| 505 | | | | X | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 506 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | X | | | |
| 507 | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 508 | | | | X | X | X | | | | | | X | | | | X | | | | | | | | | | | | | | X | | | |
| 509 | | | | | | | | | | | | X | | | | X | | | | | | | | | | | | | | X | | | |
| 510 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 511 | | | | X | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 512 | | | | X | X | | | | | | | | | | | | | | X | | | | | | | | | | | X | | | |
| 513 | | | | X | X | | | | | | | X | | | | X | | | | | | | | | | | | | | X | | | |
| 514 | | | | | X | | | | | | | | | | | X | | | | | | | | | | | | | | | X | | |
| 515 | | | | X | X | | | | | | | | | | | | | | | | | X | | | | | | | | X | | | |
| 516 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 517 | | | | | X | | | | | | | | | | X | | | | | | | | | | | | | | | X | | | |
| 518 | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | X | | | |
| 519 | | | X | X | X | | | | | | | | | | | X | | | | | | X | | | | | | | | X | | | |
| 520 | X | X | | X | X | | | | | | | X | | | | X | | | | | | X | | | | | | | | X | | | |
| 521 | X | X | | X | X | | X | | | | | X | | | | X | | | | | | X | | | | | | | | X | | | |
| 522 | | X | X | X | X | | | | | | | X | X | | | X | | | | | | X | | | | | | | | X | | | |
| 523 | X | X | | | X | | | | | | | X | | | | X | | | | | | X | | | | | | | | X | | | |
| 524 | | | | | | | | | | | | | | | | | | | X | | | | | | | | | | | X | | | |

19-cv-1058
Page Disposition Totals

| **Page Disposition Totals** |
| --- |
| **Total: 524** |
| RIF: 63 |
| RIP: 313 |
| WIF: 148 |
| • FOIA Exemption(s):        119 |
| • Duplicate:        29 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SETH HETTENA,                              )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )        Civil Action No. 19-1058 (ABJ)
                                           )
U.S. DEPARTMENT OF JUSTICE,                )
                                           )
            Defendant.                     )
                                           )

# EXHIBIT R

```
0030  MRI 00925

PP RUCNFB LON VIE FBIBA FBILA FBINY FBIPH FBIWMFO

DE FBIMM #0008 1531356

ZNY EEEEE

P 021321Z JUN 95

FM FBI MIAMI (92H-MM-74093 SUB A1A1) (D-7) (P)

TO DIRECTOR FBI/PRIORITY/

LEGAT LONDON/PRIORITY/

LEGAT VIENNA/PRIORITY/

FBI BALTIMORE (INFO)/PRIORITY/

FBI LOS ANGELES (INFO)/PRIORITY/

FBI NEW YORK (281H-NY-237731) (INFO)/PRIORITY/

FBI PHILADELPHIA (INFO)/PRIORITY/

FBI WMFO (281H-WF-198820) (C-11) (INFO)/PRIORITY/

BT

UNCLAS E F T O

SECTION TWO OF TWO SECTIONS

CITE:  //3460//

PASS:  FBIHQ FOR SSA [          ] EUROPEAN/ASIAN UNIT,

OC/DRUG BRANCH NO 2, CID; BALTIMORE FOR SA [          ] SQUAD

12; NEW YORK FOR SSA [          ] LEGAT LONDON FOR ALAT
```

b6 -1
b7C -1

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

JUN 0 2 1995

FBI — NEW YORK

7