**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| SETH HETTENA | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-1058 (ABJ) |
| | * | |
| DEPARTMENT OF JUSTICE | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ............................................................................................................... 2

STANDARD OF REVIEW ........................................................................................ 2

THE GOVERNMENT HAS NOT MET THE LEGAL BURDEN NECESSARY TO
WARRANT SUMMARY JUDGMENT WITH RESPECT TO FOIA EXEMPTIONS
6, 7(C) OR 7(D) ........................................................................................................ 2

The Government's Categorical Withholdings In Reliance Upon FOIA Exemptions 6
And 7(C) Are Not Sufficiently Predicated ................................................................ 3

The Trump Organization does not qualify for privacy protection under FOIA
Exemption 6 or 7(C) ............................................................................................. 5

Alternatively, the Government has failed to sufficiently demonstrate that the
overriding public interest in disclosure of responsive records does not outweigh
any categorical privacy interests the Trump Organization might hold ................... 7

The Government Has Not Met Its Legal Burden To Sustain FOIA Exemption 7(D)
Withholdings Concerning Third Party Sources Operating Under An Implied
Assurance Of Confidentiality ...................................................................................... 9

CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

Cases

ACLU v. Dep't of Justice, 655 F.3d 1 (D.C. Cir. 2011)......................................................... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).......................................................... 2

Church of Scientology, Inc. v. Turner, 662 F.2d 784 (D.C. Cir. 1980).............................. 3

Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice, 746 F.3d 1082 (D.C. Cir. 2014) ..................................................................................................................... 8

Dep't of Justice v. Landano, 508 U.S. 165 (1993) .......................................................... 10

Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749 (1989) .......... 7

Doe v. FEC, 302 F. Supp. 3d 160 (D.D.C. 2018) ................................................................ 5

Doe v. FEC, 920 F.3d 866 (D.C. Cir. 2019) ........................................................................ 5

FCC v. AT&T, Inc., 562 U.S. 397 (2011) ........................................................................... 5

Gardels v. CIA, 689 F.2d 1100 (D.C. Cir. 1982)................................................................. 3

Graff v. FBI, 822 F. Supp. 2d 23 (D.D.C. 2011) ................................................................ 8

Hayden v. NSA, 608 F.2d 1381 (D.C. Cir. 1979)................................................................. 3

Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006)............................................................. 2

Jett v. FBI, 139 F. Supp. 3d 352 (D.D.C. 2015) ................................................................. 8

King & Spaulding, LLP, v. Dep't of Health and Hum. Servs., 270 F. Supp. 3d 46 (D.D.C. 2017) ..................................................................................................................... 9, 10

King v. Dep't of Justice, 830 F.2d 210 (D.C. Cir. 1987)................................................. 2, 3

Montgomery v. IRS, 356 F. Supp. 3d 74 (D.D.C. 2019)................................................... 10

Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157 (2004) ................................... 7

Nation Magazine v. U.S. Customs Serv., 71 F.3d 885 (D.C. Cir. 1995)........................... 8

PHE, Inc. v. Dep't of Justice, 983 F.2d 248 (D.C. Cir. 1993) ........................................... 3

Quinon v. FBI, 86 F.3d 1222 (D.C. Cir. 1996)....................................................................... 8

Stern v. FBI, 737 F.2d 84 (D.C. Cir. 1984) ........................................................................ 8

Rules

Fed. R. Civ. P. 56(c) ............................................................................................................ 2

This Freedom of Information Act ("FOIA") action was brought by the plaintiff, Seth Hettena ("Mr. Hettena"), to secure records regarding Vyacheslav Kirillovich Ivankov ("Mr. Ivankov"), a deceased Russian mafia boss and convicted felon. The Government has filed a Motion for Summary Judgment ("Government Motion"), see Dkt. No. 18 (filed July 2, 2020), contending that redactions or withholdings made by the Federal Bureau of Investigation ("FBI") pursuant to FOIA Exemptions 3, 6, 7(C), 7(D) and 7(E) are warranted as a matter of law. Having reviewed the Government's Motion, Mr. Hettena is narrowing his remaining challenges to the broad withholding of records *in full* in two contexts: (a) FOIA Exemptions 6 and 7(C) invocations potentially implicating the Trump Organization; and (b) FOIA Exemption 7(D) invocations potentially implicating Donald J. Trump ("Mr. Trump").[1]

For the reasons outlined below, Mr. Hettena respectfully submits this Court should deny the Government's Motion in part.

## FACTUAL BACKGROUND

The factual and procedural background at issue in this proceeding was previously set out in detail in Mr. Hettena's Complaint, see Dkt. No. 1 at ¶¶5-17 (filed April 16, 2019), as well as in the Government's Motion, see Dkt. No. 18 at *2-*3, both of which are incorporated herein by reference.[2] Mr. Hettena will not burden this Court with an additional recitation of this information.

---

[1] Mr. Hettena is conceding any remaining challenges to redactions and/or withholdings made to responsive records.

[2] The factual statements made in the Government's Motion are incorporated only to the extent that they do not constitute legal characterizations and conclusions.

## ARGUMENT

### I.  STANDARD OF REVIEW

In evaluating the appropriateness of summary judgment pursuant to Federal Rule of Civil Procedure 56, the Court must view the evidence in the light most favorable to the non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), accept the non-moving party's evidence as true, and draw "all justifiable inferences" in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment should only be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. Anderson, 477 U.S. at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

### II.  THE GOVERNMENT HAS NOT MET THE LEGAL BURDEN NECESSARY TO WARRANT SUMMARY JUDGMENT WITH RESPECT TO FOIA EXEMPTIONS 6, 7(C) OR 7(D)

"The significance of agency affidavits in a FOIA case cannot be underestimated." King v. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987). The rationale behind this well-established axiom is clear given that in FOIA cases "the agency alone possesses knowledge of the precise content of documents withheld," thereby forcing both the FOIA requester and the court to "rely upon the agency's representations for an understanding of

2

the material sought to be protected." Id. In order to withhold information an agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Id. at 219.  Vague or conclusory explanations by the agency will not suffice. See also Church of Scientology, Inc. v. Turner, 662 F.2d 784, 787 (D.C. Cir. 1980)("We have consistently maintained that vague, conclusory affidavits, or those that merely paraphrase the words of a statute, do not allow a reviewing judge to safeguard the public's right of access to government records."). Rather, specificity is paramount. See Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982).

The burden of demonstrating that the material in question was properly withheld commonly requires the preparation of a detailed Vaughn Index, which must "show specifically and clearly that the requested materials fall into the category of documents" that Congress has exempted. Hayden v. NSA, 608 F.2d 1381, 1390 (D.C. Cir. 1979). See also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993)("[A]n affidavit that contains merely a 'categorical description of redacted material coupled with a categorical indication of anticipated consequences of disclosure is clearly inadequate.'"), quoting King, 830 F.2d at 224; King, 830 F.2d at 225 ("The measure of a Vaughn Index is its descriptive accuracy, and we are willing to accept innovations in its form so long, but only so long, as they contribute to that end.").

### A.  The Government's Categorical Withholdings In Reliance Upon FOIA Exemptions 6 And 7(C) Are Not Sufficiently Predicated

In his Complaint, Mr. Hettena noted how Mr. Ivankov – prior to his prosecution, imprisonment, and ultimate deportation – was a frequent visitor at Trump Organization

properties, such as the Trump Taj Mahal and Trump Tower. See Dkt. No. 1 at ¶8. The

scope of Mr. Hettena's FOIA request to the FBI encompassed "any interactions or

associations between Mr. Ivankov and President Trump or the Trump Organization".

Id. at ¶¶5, 10, 12; see also Dkt. No. 18-1, Exhibit "A" (copy of Mr. Hettena's original

FOIA request). The Government has not produced any documentation in the course of

this litigation that refers to the Trump Organization, whether the corporate entity writ

large or its subsidiary properties and entities. The Government did, however, produce two

particular documents *prior* to the initiation of litigation that confirm Mr. Ivankov was

recorded regularly visiting the Trump Taj Mahal in March and April 1993, including

gambling as much as $250,000.00 in April 1993 at the Trump Taj Mahal Casino and

receiving "chauffeured" rides to the Taj Mahal. See Exhibit "1" (redacted FBI notes).

In support of its dispositive motion, the Government provided a sworn declaration

from Michael Seidel ("Seidel Declaration"). See Dkt. No. 18-1 (filed July 2, 2020). In the

Seidel Declaration, the Government explains that it has withheld records in full in

reliance upon FOIA Exemptions 6 and 7(C), and particularly for records that fall within

the scope of two categories of ongoing informational relevance to Mr. Hettena: (i) names

and identifying information of third parties of investigative interest; and (ii) names and

identifying information of third parties merely mentioned. Id. at ¶¶38, 54-55;

see also Dkt. No. 18 at *9-*14 (outlining legal argument for withholding records as

invasion of privacy).[3]

---

[3] The Government also invoked FOIA Exemptions 6 and 7(C) in order to withhold *in part* various responsive records. Mr. Hettena's challenge is only with respect to those records that were withheld *in full*, and that the Government specifically identified in its dispositive motion. See Dkt. No. 18 at *9 n.8 (identifying Bates Numbers of applicable responsive records withheld in full in reliance upon FOIA Exemptions 6 and 7(C)).

The premise of Mr. Hettena's challenge to the categorical withholdings in reliance upon FOIA Exemptions 6 and 7(C) focuses on two questions: (1) did the Government broadly withhold information concerning the Trump Organization on the basis of privacy interests; and (2) if the Government did so and could legally do so, were those privacy interests outweighed in the present case? Declaration of Bradley P. Moss at ¶4 (signed August 3, 2020)("Moss Decl."), attached as Exhibit "2".

For the reasons outlined below, Mr. Hettena submits that the Government has failed to meet its legal burden in answering either of those questions, and therefore summary judgment is not warranted at this time.

1. *The Trump Organization does not qualify for privacy protection under FOIA Exemption 6 or 7(C)*

The Supreme Court made it clear nine years ago that FOIA Exemptions 6 and 7(C) do *not* extend privacy protection to corporations. See FCC v. AT&T, Inc., 562 U.S. 397, 409 (2011); see also id. (noting Congress had taken affirmative steps to protect corporation's commercial and financial information, but made no indication intended to extend reach of privacy protections to corporations). That legal analysis has not been questioned – as best as the undersigned can tell – by any court within this Circuit. See Doe v. FEC, 920 F.3d 866, 872 (D.C. Cir. 2019)(reiterating "personal privacy" refers to "individuals", not "corporations or other artificial entities"), citing FCC, 562 U.S. at 403; see also Doe v. FEC, 302 F. Supp. 3d 160, 174 (D.D.C. 2018)(personal privacy does not apply to trust entity).

Due to the vague verbiage relied upon in the Seidel Declaration, there is not enough information for either Mr. Hettena or – more importantly – this Court to conclude if the Government is contending that, (1) all responsive records reflecting interactions between Mr. Ivankov and the Trump Organization were withheld for privacy reasons under FOIA Exemptions 6 and 7(C), or (2) there were no such responsive records beyond the two aforementioned redacted documents released prior to litigation. Moss Decl. at ¶5.

If the former option is the answer, this Court is bound by the <u>FCC</u> ruling to reject the Government's contention as a matter of law. Neither the Trump Organization, nor any of its artificial subsidiaries, retain privacy interests under FOIA Exemptions 6 or 7(C). If that was the basis for withholding otherwise response records in full, this Court should deny the Government's Motion with respect to those particular records and require reprocessing of the records to determine if any portions can be released. Moss Decl. at ¶5.

If the latter option was the answer, and there simply were no other responsive records, then the Government should be required, at a minimum, to submit a supplemental declaration clarifying that fact. <u>Id</u>. Nowhere within the four corners of the Seidel Declaration is that point made sufficiently clear, and, lest there be any confusion, the Government has *not* sought to make a <u>Glomar</u> invocation and refuse to confirm or deny the existence or non-existence of such records. Indeed, the Government previously released documentation prior to litigation, <u>see</u> Exhibit "1" (redacted FBI notes), that would have fallen within the scope of the "names and identifying information of third parties merely mentioned" category.

Until that material fact is sufficiently clarified, summary judgment remains unwarranted in the present case.

> 2. *Alternatively, the Government has failed to sufficiently demonstrate that the overriding public interest in disclosure of responsive records does not outweigh any categorical privacy interests the Trump Organization might hold*

If the Government clarifies that responsive records were withheld in full under FOIA Exemptions 6 and 7(C), and even if this Court were to conclude that some manner of privacy interests *could* apply to the Trump Organization under those exemptions, those categorical privacy interests could reasonably be construed as outweighed by the public's interest in disclosure of the records.

The Supreme Court laid out the basic principles for the Exemption 7(C) balancing test fifteen years ago.

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).[4]

Matters of substantive law enforcement policy are properly the subject of public concern, whether or not the policy in question is lawful. See ACLU v. Dep't of Justice, 655 F.3d 1, 14 (D.C. Cir. 2011). And even when third party privacy interests are at issue, the D.C. Circuit has repeatedly held that those interests can be superseded by the public's interest in knowing "what their government is up to."

> Although Reporters Committee and the precedent of this circuit make clear that FOIA extends only to those records which reveal something

[4] The privacy language in Exemption 7(C) is broader than that of Exemption 6, see Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 756 (1989), and therefore is the higher burden which has to be met in demonstrating an overriding public interest in disclosure.

about agency action, the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption. Such records may still be cloaked with the public interest *if the information would shed light on agency action*.

Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 894-95 (D.C. Cir. 1995)(emphasis

added). See also Quinon v. FBI, 86 F.3d 1222, 1231 (D.C. Cir. 1996)("The public interest

to be taken into the balance is that in official information that sheds light on an agency's

performance of its statutory duties.")(internal quotations omitted).

There is no dispute that the information compiled in the FBI's investigative file

qualifies as records compiled for law enforcement purposes. If this Court concludes that

the Trump Organization can retain some manner of privacy interests, the crux of the

remaining dispute focuses on the simple question of whether the seriousness of the

governmental conduct at issue, as well as the corresponding public interest in revealing

such conduct, overrides that privacy interest. See Graff v. FBI, 822 F. Supp. 2d 23, 38

(D.D.C. 2011); see also Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice,

746 F.3d 1082, 1095 (D.C. Cir. 2014)("[A] categorical approach is appropriate only if a

case fits into a genus in which the balance *characteristically* tips in one direction.")

(internal quotations and citation omitted)(emphasis in original); Stern v. FBI, 737 F.2d

84, 91 (D.C. Cir. 1984)("Because the myriad of considerations involved in the Exemption

7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon

the type of document requested, the type of individual involved, or the type of activity

inquired into, are generally disfavored."); Jett v. FBI, 139 F. Supp. 3d 352, 366 (D.D.C.

2015)("But the public surely has an interest here in knowing how the FBI and DOJ

conducted a public investigation involving an elected federal official and … [] why they

ultimately decided not to pursue it further.").

The existing record more than sufficiently demonstrates an overriding public interest in disclosure that would outweigh any minimal privacy interest the Trump Organization could theoretically retain. A criminal investigation that resulted in prosecution of a Russian mafia boss overlapped with Trump Organization properties, as outlined in the Complaint, see Dkt. No. 1 at ¶8, and previously disclosed FBI records, see Exhibit "1" (redacted FBI notes). Given the white-collar nature of Mr. Ivankov's crimes – his prosecution centered around millions of dollars in extortion schemes, see Dkt. No. 1 at ¶6 – and the existence of evidence noting his regular presence at Trump Organization properties, it would be more than reasonable to expect the Government's investigation captured any number of interactions between Mr. Ivankov and the Trump Organization. Did the Government's investigation contain evidence of Mr. Ivankov's criminal conspiracy being formulated or planned out while at Trump Organization properties? Did Mr. Ivankov's gambling at Trump Organization properties ever result in scrutiny of the Trump Organization itself as part of the Government's investigation? Moss Decl. at ¶6. The answers to these questions surely would be of considerable public interest and warrant the conclusion any categorical privacy withholdings are improper as a matter of law.

**B.  The Government Has Not Met Its Legal Burden To Sustain FOIA Exemption 7(D) Withholdings Concerning Third Party Sources Operating Under An Implied Assurance Of Confidentiality**

FOIA Exemption 7(D) case law similarly indicates that the Trump Organization as an entity, as opposed to specific individuals working for or affiliated with the Trump Organization, would not necessarily be entitled to protection under FOIA Exemption 7(D). See King & Spaulding, LLP, v. Dep't of Health and Hum. Servs., 270 F. Supp. 3d

46, 48-9 (D.D.C. 2017), <u>citing</u> <u>Dep't of Justice v. Landano</u>, 508 U.S. 165, 176 (1993). Unlike with respect to FOIA Exemptions 6 and 7(C), however, the Seidel Declaration does provide a measure clarity in noting that the third-party source who provided confidential information under an implied assurance of confidentiality is an actual "individual", <u>see</u> Dkt. No. 18-1 at ¶¶77-78, as opposed to an artificial entity such as the Trump Organization. The Government withheld in full over 80 pages of responsive records in reliance upon Exemption 7(D), <u>see</u> Dkt. No. 18 at 14 n.11, although the Seidel Declaration does not clarify how many of those pages fall within the one category of continued interest to Mr. Hettena.

The crux of Mr. Hettena's challenge to the categorical FOIA Exemption 7(D) withholdings with respect to this one particular category of information is limited to the issue of whether previous official disclosures of information by the FBI sufficiently nullifies the propriety of the Government's categorical withholding in the present case. <u>See</u> <u>Montgomery v. IRS</u>, 356 F. Supp. 3d 74, 82 (D.D.C. 2019)(evaluating facts applicable to an "official disclosure" argument against a <u>Glomar</u> response relying upon FOIA Exemption 7(D)). In particular, Mr. Hettena directs this Court to an official disclosure of information by the FBI documenting the previous willingness by Mr. Trump to cooperate with the FBI to prevent infiltration by elements of "Organized Crime" of what would become the Trump Taj Mahal in Atlantic City, New Jersey. <u>See</u> Exhibit "3" at *1-*2 (FBI Memorandum, dated September 22, 1981). That official disclosure concerns the very same criminal issue and location as what would peripherally ensnare the Trump Taj Mahal twelve years later: a member of Organized Crime,

10

Mr. Ivankov, being a frequent guest and customer at the Trump Taj Mahal in the months and years leading up to his later prosecution, conviction, and deportation.

At a minimum, the previous official disclosure by the FBI of Mr. Trump's interest in coordinating with the agency through use of confidential informants and other methods to prevent infiltration of his casino by criminal elements undermines the notion that Mr. Trump could simultaneously serve as a third-party source of information under an *implied* assurance of confidentiality. The Government has already informed the public of the fact that Mr. Trump was willing to cooperate and provide information on these very types of issues at this very same property, the Trump Taj Mahal. It is unclear what about this specific investigation into Mr. Ivankov would have altered that analysis and led the Government to currently infer that Mr. Trump still expects any information he may have provided was under an assurance of confidentiality. Moss Decl. at ¶7.

Until such time as the Government provides an improved declaration that sufficiently clarifies this material factual dispute, summary judgment is not yet warranted with respect to whether FOIA Exemption 7(D) can apply to Mr. Trump.

11

## <u>CONCLUSION</u>

For the foregoing reasons, the Government's Motion should be denied in part.

Date: August 3, 2020

Respectfully submitted,

/s/ *Bradley P. Moss*

_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for Plaintiff