EXHIBIT "2"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SETH HETTENA | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 19-1058 (ABJ) |
| DEPARTMENT OF JUSTICE | * | |
| Defendant. | * | |

**<u>RULE 56(d) DECLARATION OF BRADLEY P. MOSS, ESQ.</u>**

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I am making this Declaration on personal knowledge. This Declaration is submitted in support of the plaintiff's Memorandum in Opposition to the defendant's Motion for Summary Judgment.

2. I am one of the attorneys for the plaintiff Seth Hettena ("Mr. Hettena") in this matter, along with my firm's Managing Partner, Mark S. Zaid ("Mr. Zaid"). I am admitted to practice law in the State of Illinois and the District of Columbia, as well as the U.S. Court of Appeals for the D.C. Circuit and the United States District Courts for the District of Columbia, District of Maryland and the Northern District of Illinois. I have been litigating cases involving the federal government, including with respect to the Freedom of Information Act ("FOIA"), since 2007. I also actively represent individuals associated with or within the intelligence, law enforcement or military communities in administrative proceedings. Both Mr. Zaid and I have held U.S. Government security clearances, granted by the Department of Justice, for the purpose of representing specific

clients, some of whose affiliation to the U.S. Government is a classified fact.

3. In the defendant's Motion for Summary Judgment, the Federal Bureau of Investigation ("FBI") relied upon a declaration submitted by Michael Seidel ("Seidel Declaration") to justify revised arguments. The scope of Mr. Hettena's challenge has been narrowed to the categorical withholding in full of documents in two situations: (a) FOIA Exemption 6 and 7(C) invocations potentially implicating the Trump Organization; and (b) FOIA Exemption 7(D) invocations potentially implicating Donald J. Trump (Mr. Trump"). For the reasons outlined below, and at a minimum, there are genuine issues of material dispute that preclude awarding summary judgment with respect to those two sets of categorical withholdings due to the insufficiency of the explanations in the Seidel Declaration.

4. In terms of FOIA Exemptions 6 and 7(C), the Seidel Declaration particularly states that records were withheld in full with respect to two categories of information in which Mr. Hettena maintains interest: (i) names and identifying information of third parties of investigative interest; and (ii) names and identifying information of third parties merely mentioned. The Seidel Declaration fails to clarify whether these categorical exemption invocations were applied with respect to the Trump Organization in the context of either of the two aforementioned categories of information. Indeed, the Seidel Declaration provides this Court with no real clarity in terms of whether there were no records responsive to Mr. Hettena's FOIA requests encompassing the Trump Organization, or if the Government located responsive records but is withholding them in reliance upon FOIA Exemptions 6 and 7(C).

5. If the Government located no such responsive records, the Government should be required to clarify that point through a supplemental declaration. If responsive records were located, however, this Court should reject the invocation of FOIA Exemptions 6 and 7(C) due to binding Supreme Court precedent finding that corporations lack privacy interests, and require the Government to reprocess any such records for possible release.

6. Even if this Court concludes that the Trump Organization could retain some manner of privacy interests under FOIA Exemptions 6 and 7(C), there are multiple unresolved questions implicating material facts that could demonstrate an overriding public interest in disclosure. Given Mr. Ivankov's confirmed presence at Trump Organization properties, as verified by even FBI records that were officially released, did the Government's investigation encompass his activities at those properties? Did the Government conclude his regular presence at the Trump Organization properties warranted at least a modicum of additional scrutiny of the Trump Organization itself in the context of the criminal conspiracy in which Mr. Ivankov was involved? These answers require resolution before summary judgment could be justified.

7. In terms of FOIA Exemption 7(D), the Seidel Declaration states that an unquantified number of records were withheld in full on the basis that they contain information provided by a third-party source with an implied assurance of confidentiality. However, the FBI has previously released documentation memorializing Mr. Trump's willingness to coordinate with the FBI in countering potential infiltration of the Trump Taj Mahal by members of Organized Crime. If Mr. Trump's amenability to serving as a third party source has already been verified, and that willingness to cooperate was with respect to the very same type of criminal actions (those by Organized Crime) at the very

same Trump Organization property (the Trump Taj Mahal), it is unclear on what basis information Mr. Trump provided (if any) in the context of Mr. Ivankov would have been viewed as done under an implied assurance of confidentiality. At a minimum, this discrepancy requires clarification before summary judgment is granted, even if only to make clear that Mr. Trump was *not* a third-party source of information.

I do solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge.

Date:   August 3, 2020

_____
Bradley P. Moss, Esq.