UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SETH HETTENA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| Defendant. | ) | |

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia.  I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012.  In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide.  Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide.  I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S.

1

Army Litigation Division where I oversee FOIPA litigation for the U.S. Army.  I am an attorney registered in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 235 FBI employees, supported by approximately 94 contractors, who staff a total of twelve (12) FBI Headquarter ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request for records related to Vyacheslav Ivankov.

(4)     This declaration is submitted in response to Plaintiff's opposition to Defendant's Motion for Summary Judgment. (ECF No. 20).  It supplements and incorporates by reference the information previously provided in my first declaration of June 2, 2020. (ECF No. 18.)  Plaintiff's opposition challenges the FBI's use of Exemptions 6 and 7(C) to withhold documents in full that

potentially implicate the Trump Organization; and the FBI's use of Exemption 7(D) to withhold documents in full[1] that potentially implicate Donald J. Trump.

(5)    The FBI asserted Exemptions 6 and 7(C) for categories 2 (individuals of investigative interest) and 3 (individuals merely mentioned) on 90 pages that were withheld in full, and did not assert Exemption 7(D) for category 6 (implied confidentiality) on any pages withheld in full, only on Bates page 19-cv-1058(FBI)-371, which was released in part.

## FOIA EXEMPTIONS (b)(6) AND (b)(7)(C) CHALLENGES

(6)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.  Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).[2]

(7)    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  In asserting these exemptions, each piece of information was

---

[1] The FBI did not utilize Exemption Category b7D-6 for a source protected under an implied assurance of confidentiality on any pages withheld in full. See ¶ 5 for further description of the application of b7D-6.

[2] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).  Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. In each instance where information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.[3]

(8)     Plaintiff challenges the FBI's use of Exemptions 6 and 7(C) to withhold documents in full that pertain to the Trump Organization. As described above and in the First Seidel Declaration, the FBI uses exemptions 6 and 7(C) to protect the personal privacy of individuals. The FBI does not use Exemptions 6 and 7(C) as a basis to withhold the identities of any organizations. In the interest of satisfying Plaintiff's challenge in this case, the FBI did not use Exemptions 6 and 7(C) to withhold documents in full to protect mentions of the Trump Organization because no organizations of any type were protected by Exemptions 6 and 7(C).

## EXEMPTION 7(D) CHALLENGES

(9)     Exemption 7(D) protects "records or information compiled for law enforcement purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

---

[3] In the instances when the FBI withheld a page in full pursuant to Exemptions 6 and 7(C) only, the FBI determined there was no segregable information releasable to Plaintiff beyond information that would identify the person mentioned, or would reveal identifying or potentially identifying information.

4

　
5 U.S.C. § 552(b)(7)(D).

(10)    To the extent Plaintiffs seek records indicating whether or not a third-party individual was an FBI informant, the FBI relies on a *Glomar* response pursuant to FOIA Exemption (b)(7)(D).    Doing otherwise jeopardizes the FBI's confidential source program. Numerous confidential sources report to the FBI on a regular basis under express or implied assurances of confidentiality. *See* Seidel Decl. ¶¶ 62-64, 77-79.  In Plaintiff's opposition, he seeks to find out whether at any point, the FBI withheld the identity or information provided by Donald J. Trump.  He avers an FBI record from a separate, unrelated investigation from a decade prior to the investigation of Mr. Ivankov reveals Mr. Trump agreed to be an FBI informant and that should be treated as an official government acknowledgement of Mr. Trump as an FBI informant.  The FBI disagrees with Plaintiff's assessment for the following reasons: First, even though the record presented by Plaintiff is available on a non-government website, Plaintiff provides no factual basis to conclude the record is the product of an official government acknowledgement.  Moreover, RIDS was unable to confirm whether the record was officially placed in the public domain via an authorized FBI records release.  The FBI does not routinely release third party informant records to the public.  Therefore, RIDS did not consider this record as an authorized official disclosure by the agency that would trigger a FOIA waiver.  Second, even if the FBI were to consider the record submitted by Plaintiff, which it is not, the record failed to impart informant status to Mr. Trump.

(11)    Beyond advancing a theory of who may or may not be withheld under Exemption 7D, Plaintiff provides no basis to show the FBI inappropriately asserted Exemption 7D.  To the extent Plaintiff seeks confirmation that would indicate whether or whether not Mr. Trump was an FBI informant, the FBI can neither confirm nor deny Plaintiff's theory, pursuant to FOIA Exemption (b)(7)(D).  The exemption does not require an agency to show who it did or did not

specifically protect. The exemption only requires an agency provide sufficient justification that it withheld information that could reasonably be expected to disclose the identity of a confidential source. Revealing the identity of who the FBI did or did not protect under Exemption 7D could also narrow the field on who did assist law enforcement in their efforts against Mr. Vyacheslav, and potentially reveal those who were protected by 7D. For the FBI to protect the identity of sources, it must also refuse to confirm or deny whether a particular person is not an FBI source. If the FBI responded substantively in those instances when the individual was not in fact an informant but refused to confirm whether or not responsive records existed when the individual was an informant, this practice would itself reveal which individuals are informants.

(12)    The harm from these types of disclosures is two-fold. First, they would endanger current FBI informants as the FBI's FOIA responses would create a pattern where one could easily discern who is and is not an FBI informant. This would expose FBI informants to reprisal, in many forms, by those on whom they provided information and others who may think negatively of their cooperation with the FBI. Second, it would portray an unwillingness on the part of the FBI to take appropriate measures to ensure the safety and confidentiality of its informants. Exposing confidential sources to public scrutiny would decimate the FBI's confidential informant program by dissuading current and future potential sources from providing or continuing to provide critical, law enforcement relevant information to the FBI. Accordingly, the FBI must rely on a *Glomar* response in any instance where a requester seeks records about an alleged informant.

## CONCLUSION

(13)    After further review of the documents withheld in full pursuant to Exemptions 6 and 7(C), the FBI confirmed it did not withhold the identities of any organization, including the Trump Organization, on the basis of those exemptions. Additionally, the FBI can neither confirm

nor deny the identity of any individual withheld pursuant to Exemption 7D, as disclosing that fact endangers the very information the exemption is intended to protect.  As described in the First Seidel Declaration at ¶¶ 54-55, 62-64, 77-79, information was properly withheld pursuant to FOIA Exemptions 6, 7(C), and 7(D).  The FBI carefully examined the documents and determined the information withheld from Plaintiff in this case, if disclosed, would cause a clearly unwarranted invasion of personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; and/or could reasonably be expected to disclose the identities of confidential sources and the information they provided.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of September, 2020.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia