UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SETH HETTENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1058 (ABJ) |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

On April 16, 2019, plaintiff Seth Hettena filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking records responsive to a September 2017 request made to the Federal Bureau of Investigation ("FBI"), a component agency within defendant United States Department of Justice ("DOJ"). Compl. [Dkt. # 1] ¶¶ 3–4, 11. Plaintiff is a journalist, and he sought all information in the FBI's possession on Vyacheslav Kirillovich Ivankov ("Ivankov"), a Russian national with alleged ties to organized crime who was sentenced to prison for extortion in the United States in 1997, extradited to Russia in 2004, and assassinated in 2009. *Id.* ¶¶ 5–7; *see also* Ex. A to Decl. of Michael G. Seidel [Dkt. # 18-1] at 51–56 ("FOIA Request").[1] Plaintiff alleged that the FBI provided "no substantive response" to his request. Compl. ¶ 18.

DOJ ultimately processed plaintiff's request, and it produced some records in full or in part and withheld others in full, and it moved for summary judgment on July 2, 2020. Def.'s Mot. for Summ. J. [Dkt. # 18] ("Mot."); *see also* Decl. of Michael G. Seidel [Dkt. # 18-1] ("First Seidel Decl.") ¶ 4. Plaintiff opposed the motion, Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. # 20]

---

1   Citations are to the numbers at the top of each page ("Bates numbers").

("Opp."), and defendant replied.  Def.'s Reply in Supp. of Mot. [Dkt. # 21] ("Reply").  For the reasons set forth below, the case will be dismissed as moot pursuant to Federal Rule of Civil Procedure 12(h)(3).

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."); *Conserv. Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."), quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).  Subject matter jurisdiction may not be waived, and "courts may raise the issue *sua sponte*."  *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982).  Indeed, a federal court must raise the issue because it is "forbidden . . . from acting beyond [its] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *NetworkIP, LCC*, 548 F.3d at 120, quoting *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

Article III, Section 2 of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "This limitation gives rise to the doctrines of standing and mootness."  *Foretich v. United* States, 351 F.3d 1198, 1210 (D.C. Cir. 2003).  A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990).  "It has long been settled that a federal

court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011) (internal quotation marks omitted), quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).  In light of those principles, this Court must dismiss the case.

In his opposition to defendant's motion for summary judgment, plaintiff stated that he had narrowed his challenge to object only to the withholding of records in full, and to those withholdings in just two contexts.  First, plaintiff stated that he would object to any assertions of Exemptions 6 and 7(C) – the exemptions covering disclosures that would result in unwarranted invasions of personal privacy – on behalf of the Trump Organization (as opposed to an individual person) as a basis for withholding a record in full.  Opp. at 5.  Second, in the wake of the assertion in the government's memorandum that "[a]n implied assurance of confidentiality also exists to protect from disclosure information provided by a third party regarding Russian Organized Crime . . . ," *see* Mot. at 18–19, citing First Seidel Decl. ¶ 78, plaintiff noted an objection to any assertion of Exemption 7(D) – which permits agencies to withhold law enforcement records that could disclose the identity of a confidential source – as a basis for withholding a record in full that potentially implicated Donald J. Trump as a third party source operating under an implied assurance of confidentiality.  Opp. at 13; *see* 5 U.S.C. § 552(b)(7)(D).

Plaintiff then utilized the briefing opportunity to ask the defendant whether any records had been withheld in full on those grounds.  Opp. at 10.  He then took the position that if the agency had asserted Exemptions 6 and 7(C) to protect an organization, that would have been improper, and that the public interest in the information would outweigh the privacy interests in any event. *Id.* at 9–13.  With respect to Exemption 7(D), plaintiff took the position that if a document had

been withheld in full under that exemption to shield the identity of Mr. Trump as an informant, that information would not be subject to the exemption because Mr. Trump's alleged offer to cooperate with the FBI in a previous investigation – which according to plaintiff was comparable to an implied assurance of confidentiality – had already been officially disclosed in a memorandum plaintiff attached as an exhibit to his opposition. *Id.* at 13–15.

With its reply, the agency proffered a supplemental declaration that answered the questions. *See* Second Decl. of Michael G. Seidel [Dkt. # 21-1] ("Second Seidel Decl."). With respect to the first issue, the declarant averred that the agency had not asserted Exemptions 6 and 7(C) on behalf of the Trump Organization at all. *Id.* ¶ 8. As to the second issue, he averred that the category of exemption the agency had designated as Exemption 7(D), category 6, "Name, Identifying Data and/or Information Provided by an Individual Under an Implied Assurance of Confidentiality," had not been invoked to withhold *any* record in full related to an informant with an implied assurance of confidentiality. Second Seidel Decl. ¶ 5; *see also* Exemption Application Index, Ex. Q to First Seidel Decl. (defining coded category (b)(7)(D)-6). He also enumerated reasons why in the agency's view, the record attached to plaintiff's opposition, which related to an investigation that took place twelve years before the events underlying the FOIA request, and did not indicate on its face how it came to be publicly available, did not qualify as any sort of official disclosure. Second Seidel Decl. ¶ 10.[2]

In light of those circumstances, on August 11, 2021, the Court ordered the plaintiff to show cause by August 18, 2021, why the matter should not be dismissed as moot. Min. Order (Aug. 11, 2021). Nothing has been filed in response, and it appears from the facts set forth above

---

2   The declarant also stated that "[t]o the extent Plaintiffs seek records indicating whether or not a third-party individual was an FBI informant, the FBI relies on a *Glomar* response pursuant to FOIA Exemption (b)(7)(D)." Second Seidel Decl. ¶10.

that there are no issues to be resolved, and the case is moot.  Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the case," and therefore, the case is **DISMISSED AS MOOT**.

    **SO ORDERED.**

                                                        _____
                                                        AMY BERMAN JACKSON
                                                        United States District Judge

DATE:  August 20, 2021